JANVIER, Judge.
This complicated litigation grows out of the remarkably successful operation of a small store on Magazine Street in New Orleans, just below the corner of Napoleon Avenue. The facts were to some extent set forth in an opinion rendered by us on November 8, 1954, in this same matter reported in 75 So.2d 542, and are also partially set forth in an opinion of our Supreme Court, also in the same matter, reported in 229 La. 61, 85 So.2d 31. We shall restate such facts as may seem neces-' sary to an understanding of the controversy which is now again before us.
Jacob Winsberg died on May. 8, 1937, leaving an estate containing movable and immovable property including a small store operated on the real estate. He left a widow, Mrs. Sarah Silverman Winsberg, two daughters, Mrs. Stella Winsberg Levy and Mrs. Jessie Winsberg. Bluhm, and two sons, Winfred J. Winsberg and Hermand Woodward Winsberg. He left a will in which he bequeathed to his widow his entire estate which consisted of community property. Since there were more than two forced heirs, there was in his succession proceedings a judgment which reduced the legacy to his widow and placed her and the four children in possession of the estate, %2ths to the widow and Yi2th to each of the four children. No mention was made of the usufruct in favor of the widow either in the will or in the judgment of possession. There followed at that time no actual distribution or division of the assets of the estate and the operation of the store was actively continued by all except the son Hermand, who was engaged as a shoe salesman by a shoe manufacturing concern.
Hermand Winsberg died on February 25, 1948, but, on May 5, 1948, there was born to his widow a posthumous child, Kathleen Hilda Winsberg. The administratrix of the estate of Hermand Woodward Wins-berg, who was also tutrix of the said minor daughter, brought this suit in the Civil District Court for the Parish of Orleans against the widow and the other-three children of Jacob Winsberg, seeking: an accounting of his estate .from the time of his death on May 8, 1937 through December, 1945.
It is alleged that, although the deceased husband of the administratrix (the father of the minor) had, in the 'succession proceedings of his father, been ordered sent into possession of Y.2Ü1 of his father’s estate, he had in fact never actually received his share and that the management of the property left by his father had been, carried on by his mother, his brother and his sisters, and that there was due a full and complete accounting, particularly as to the earnings and value of the store which had been continued as a going concern and as to the real estate on which the store had been operated from the time of the death of the father until the time at which an accounting was sought.
Petitioner further alleged that "an accounting would show that her deceased husband’s interest was in excess of $2,000, and she prayed for judgment against defendants for such amount as the accounting would show to be due.
As stated, there were .two issues involved, — one grew out of the operation of the store, and the other was based on the claim that the widow of Jacob Winsberg did not have the usufruct of the two-thirds of one-half interest in the real estate on which the store was operated, and that therefore Hermand W. Winsberg’s widow was entitled to his proportionate share, or %?th of the rental value of the real estate during that period.
Although it was contended by the defendants that the widow of Jacob Wins-berg, in addition -to her complete owner- . ship of the undivided one-half of the said real estate, and to one-third of the other . half, did have the usufruct of the remaining two-thirds of the other half, it was 'conceded that if it should be held that *364 she did not have the usufruct of two-thirds of the other half, an accounting' as to the value of the use of that two-thirds would show that Hermand would be entitled to a judgment for $1,460.
There was judgment denying an accounting as to the operation of the store, but in favor of the administratrix for $1,460, based on the conclusion that the widow of Jacob Winsberg did not have the usufruct of two-thirds of her deceased husband’s half of the real estate. From this judgment the defendants appealed to this Court and more than two years later plaintiff answered the appeal, praying that the judgment be amended by the ordering of an accounting as to the store opera-, tions, as well as the accounting which had been ordered as to the rental value of the real estate.
When the matter was first before us, defendants moved to strike from the record the answer of plaintiff to the appeal of defendants, asserting that the answer of plaintiff was in effect an attempt to- appeal from the judgment which had been signed on November 14, 1953, and that therefore since the answer to the appeal was not filed until May 17, 1954, or more than two years after the signing of the judgment, the answer to the appeal came too late and should be stricken from the record.
We considered that contention, discussed it at considerable length, and concluded that the answer did not come too late and that it should be considered. We then went on to discuss the question of jurisdiction ratione materiae and reached the conclusion that we were, without jurisdiction since we felt that there was involved more than $2,000, and we transferred the matter to the Supreme Court. Winsberg v. Winsberg, La.App., 75 So.2d 542. However, the Supreme Court held that the record at that time did not affirmatively show that more than $2,000 was involved and retransferred the entire matter to us. 85 So.2d 31.
It may be that, since we reached the conclusion that we did not have jurisdiction, we should not at that time have considered the contention that the answer to the appeal should be stricken from the record. Now that the matter is again before us we have again studied the reasoning on that question which appears in our opinion in which we held that the said answer should not be stricken from the record and for those reasons, to which we now refer, we hold that the answer to the appeal should be considered and that there is now before us not only the appeal of the defendants from the judgment against them for $1,460, but ‘ also the answer of plaintiff by which she presents the contention that there should be an accounting as to operation of the store also.
Since the appeal is by defendants from that part of the judgment which is against them and which orders the accounting as to the rental value of two-thirds of the real estate, we shall consider that question first. There is involved in it only the small piece of real estate on which the store is operated. It bears municipal numbers 4304-06 Magazine Street.
The will of Jacob Winsberg, as stated, left to his widow everything of which he died possessed. She, as widow in community, was the owner of an undivided one-half of that real estate, and had there been no will she would have been entitled to the usufruct of the other undivided one-half, LSA-Civ.Code, Art. 916, and thus, as owner of one-half and as usufructuary of the other one-half, could have permitted the operation of the store either with or without requiring that the store pay rent to her.
However, in Forstall v. Forstall, 28 La. Ann. 197, it was held that “Article 916 must be construed with Article 1493”, and that where the deceased partner in community has disposed by will of his or her half of the community property, the usufruct does not go to the- surviving partner in community. There the facts were identical with those which are found here and the Supreme Court plainly said that if a decedent has disposed of the share in the community by testament, the usufruct, *365 in favor of the surviving spouse, which would otherwise exist as a result of Article 916, no longer exists.
There can be no doubt that that was exactly what was decided. In fact, in his brief counsel for defendants concedes that and states the holding in the Forstall case as follows:
“The Supreme Court denied the widow the usufruct, holding that under [LSA] C.C. Art. 916, the decedent having disposed by will of his share in the community property automatically deprived the widow of the usu-fruct of the interest in the community property inherited by the issue of the marriage — that is to say, their legitime.”
However, counsel contends that in Succession of Moore, 40 La.Ann. 531, 4 So. 460, 463, the Supreme Court reached a conclusion which is “diametrically opposed” to its decision in the Forstall case.
Succession of Moore is distinguishable from the decision in the Forstall case. In fact in the Moore case the Supreme Court itself stated that there is a distinction, and obviously had no intention of overruling its decision in the Forstall case. “The terms of the wills of Forstall and of Moore are not germane. The facts are different. The ruling, [in the Moore case] therefore, cannot be invoked as a precedent.”
The distinguishing facts to which the Supreme Court pointed in the Moore-case were that
“Forstall had disposed of his entire share in the community in favor of his wife, while in the instant case Moore has bequeathed to his wife only the disposable portion, confirming her legal usufruct over the remaining portion of his share in the community property, without affecting or attempting to incumber, in the least the ownership of the two-thirds inherited by the issue.” ■
We particularly noté the reference to the fact that the will in the Moore case “confirmed” the legal usufruct of the surviving spouse.
Counsel .for defendants also relies to some extent on Succession of Baker, 129 La. 74, 55 So. 714, saying that in- that case the Supreme Court held that where the survivor is entitled to the usufruct it does not come by inheritance but comes as a result of law* Article 916 of. the Code. It is true that the Court did say that, but it went on to say that where there is a will in which the -deceased partner- in community attempts to grant to the survivor the usufruct, the will does not have the effect of creating the usufruct; it merely “confirms it.”1 In other words, as we read the Succession of Baker on this particular point, it in no way overrules Forstall v. Forstall. It merely shows that where there is no will the'usufruct passes to the survivor in community, as a matter of law, and that where there is a will, which attempts to grant to the survivor the usufruct, it does not create the usufruct but merely confirms what the law recognizes as existing. :
In Succession of Moore there is language which, only with difficulty, may be reconciled with the result reached in Forstall v. Forstall, but it is very evident that the doctrine followed in Forstall v. Forstall has not been overruled, though it must be limited to cases in which identical facts appear. This is recognized in an article entitled “Usufruct”, appearing in 18 T.L.R., page 181, for on page 204 appears the following:
“While Succession of Moore does not overrule Forstall v. Forstall, it does seem to limit it to its peculiar factual situation.”
The writer of that article went on to make the following statement:
“In order for the survivor to be .deprived of his usufruct, it would be necessary for the deceased to ignore the laws of forced heirship and attempt to bequeath the entire estate to the surviving spouse. On the other hand, where the deceased desires to *366 give the surviving spouse something in addition to the usufruct, such as the disposable portion or designating him as a particular or universal legatee, it would seem that such an act would not deprive the survivor of his usu-fruct. However, Succession of Moore does indicate that where the deceased bequeaths his disposable portion in his • last will and testament, and also affirms the distribution to his heirs without mention of the survivor’s usufruct, in that situation the survivor would be deprived of his usufruct.”
Counsel for defendants, in contending that the mother enjoyed the usufruct, direct attention to the fact that, after Her-mand W. Winsberg returned from the military service, which was after the termination of the period covering the accounting which is sought, he and his mother and his two sisters entered into a partnership agreement by which he and his two sisters were to take over the operation of the store and that in that agreement which was con-fected on instructions from Hermand, and was signed by him as well as by the others, it was stated that contemporaneously with the signing of the agreement the mother, Mrs. Sarah Silverman Winsberg, as owner and “usufructuary” should lease to the purchasers of the business the said real-estate.
Counsel contends that by entering into this agreement Hermand conceded that his mother was entitled to the usufruct of the real estate and that his administratrix cannot now be heard to contend that his mother did not have the usufruct.
In the first place, that agreement was made sometime after the termination of the period for which. an. accounting is sought. In the second place, that is not the. type of written agreement which may be relied upon as granting a'usufruct where real property is involved. ■ The LSA-Civil Code, in Article 540, provides that:
“Usufruct may b.e established by all sorts of titles; by a deed of sale, by a mariage contract, by donation, compro- • mise, exchange, last will and even by operation of law. * * * ”
However, the contention that where real property is involved a usufruct may be created informally and possibly incidentally, as is contended here, seems to be contrary to the provisions of Article 2275 of our Code which require that transfers of immovable property must be in writing, and it is contrary to the view of the Supreme Co'urt as set out in Guier v. Guier, 7 La. Ann. 103, wherein the Court made the following statement:
“Usufruct may be established by all sorts of titles; by a deed of sale, by a marriage contract, by donation, compromise, exchange, last will, and even •by operation of law, and may be established on every description of estates, movable or immovable, corporeal and incorporeal. Code 532, 533.
“We think it a fair and reasonable interpretation of these articles, that when a usufruct is established on immovable property, it should be established by a written title. The usu-fruct creates an interest in the property itself, which is transferred from the owner to the usufructuary. Now, every transfer of immovable property, or slaves, must be in writing. Code, 2255. We see no reason why an anti-chresis should be in writing, and that the establishment of a usufruct on real estate should not be. Both give rights upon the immovable property itself, and our laws have ever guarded the interests in immovable property by written titles.”
Our conclusion is that the petitioner is entitled to the $1,460 which it is conceded would have been Hermand’s and which is the rental value of the real estate.
When we come to consider the more important question of whether Herman Winsberg, had he lived, could have demanded an accounting of the movable property of his father’s estate, i. e., the operation of the store, we find a very interesting picture., At the -time'.of-the .death of thet *367 father, Jacob Winsberg, oh May 8, 1937, the entire estate was worth very little by comparison with the obvious worth of the real estate and the store on December 31, 1945. According to the inventory of the estate made in 1937, the entire assets were appraised at $7,728.80 of which the real estate was appraised at $3,500.
As of December 31, 1945, when, on the request of Hermand Winsberg, a certified public accountant made a computation of the amounts which had been distributed by the mother to the children, it was found that the assets had a value of $234,995.27. If there be deducted the value of the real estate which was then set forth as $35,-000, it will result that the movable assets were worth $199,995.27. Of this amount there remained in the possession of the mother $113,695, and it is shown that of the balance she had advanced to the children assets held by them in the following amounts: Hermand, $5,556; Winfred, $67,438.77; Mrs. Stella Winsberg Levy, $23,893; Mrs. Jessie Winsberg Bluhm, $24,-412.50.
If these figures constituted all the evidence before us, it would appear that the other children received substantially more from the estate of their father than had Hermand. However, as already stated, the store at the time of the death of the father had a very small value, and the enormous increase is shown to have resulted from its operation by the mother and the other three children and in this operation Hermand took only a spasmodic part when he happened to be in New Orleans.
Shortly after the death of the father, Hermand, who was a shoe salesman for a manufacturing concern, apparently making his headquarters in North Carolina, returned to New Orleans for'his father’s funeral and very shortly thereafter returned to North Carolina, and wrote a letter to his brother, Winfred, who seems to have been in charge of the operation of the store, and in this letter Hermand said: ■
“I suppose you have settled all bills from papa’s illness and put all the surplus funds at interest. We can let other matters remain as they are until September. I feel that the business should be turned over to you by October 1st as you are now entitled to have it. I will transfer my one-twelfth without any payment as I feel that will hardly equalize the difference between what papa gave me at various times and which was never repaid.”
Hermand continued in the employ of others until 1943 and in that year he entered the military service and remained in service until 1945, and it was at that time that he gave the accountants all of the information on which they based the computation to which we have already referred. Apparently Hermand desired the computa-' tion in order to arrange the organization of a partnership which was to take over the operation of the store, for shortly thereafter, on December 28, 1945, he wrote and' gave to Mr. Solomon Goldman, the attorney who then represented thém all, and who now represents the defendants, a ■ memorandum to be used in the preparation of a partnership agreement under which he and his two sisters were to form the partnership and were to take over the business. In the meantime, when it became necessary to prepare the partnership return of income for the year 1945, Hermand, who was an attorney, prepared the forms and/ 'in the blank space for the listing of the names and addresses of each of the partners, showed the name of his mother, his brother and his two sisters and- did not show his own name.
It is not necessary that we .analyze in detail the very interesting computation which, on the request of Hermand and on information furnished by him, was made by. the certified public; accountants, for at this time we are not interested in amounts but. merely in the principle which is.involved.
Did the actions of Hermand Winsberg and of his mother, his brother! and his' sisters indicate at any time that ’ any one of them contemplated that Hermand was' a partner in the conduct of the business’ *368 which was left by the father and which, after the death of the father, was so successfully conducted by those who remained here while Hermand was away attending to the business in which he was engaged? We think not. Had there been losses which the partners would have been required to share, would there now be a claim that, between the time at which Jacob Wins-berg died in 1937 and the time at which Hermand returned to New Orleans in 1945 and determined to form a partnership and to take over the business, Hermand was a piartner or was engaged in the joint venture and, as a result, could have been called upon to contribute his share? We think not, and we feel certain that the actions of Hermand himself during that period belie the contention that he considered himself a partner and that he had an interest in the estate left by his father above and beyond that which had been delivered to him.
When we again study the computation which was made by the accountants on figures given by Hermand, we find that Hermand himself received $5,556, which exceeded by $2,485.50 the value of his share of the'movable property left by his father. When we realize this fact and further realize that shortly after the death of his father, he wrote the letter of June, 1937, in which he stated that he had received more than he was entitled to, and when we further remember that in 1945 he got together the information on which the partnership: was to be based, and when we further realize that he prepared the partnership return and did not show himself to be a partner, we find it difficult to believe that he himself would have contended that he actually was a partner during all of that time and was entitled to his share of the earnings of the partnership, or joint venture.
Counsel for plaintiff argues that when the heirs of Jacob Winsberg were sent into possession of his estate, they became and remained owners in. indivisión and that there was no formal partition among them and that thus there was formed a partnership or something approximately akin to a partnership such as a joint venture which justifies the conclusion that they all understood it as such.
We have referred to a possible joint venture because even where there is no formal partnership, there is sometimes a relationship which is designated as a joint adventure. This relationship is described by our Supreme Court, in Daily States Pub. Co. v. Uhalt, 169 La. 893, 126 So. 228, 231, as
“ ‘a special combination of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation.’”
Where there is a relationship, wé agree with our Brothers of the Second Circuit in their statement in Young v. Reed, La.App., 192 So. 780, 785, that
“ ‘The relation of joint adventurers is governed by the principles which constitute and control the law of partnership.’ ”
We think that here there was neither a partnership nor. a joint venture.
It seems to us that there was quite an effective partition of the movable effects for the mother and the brother and sisters of Hermand bought for him $2,000 of homestead stock and later $5,556 in War Bonds which he accepted and concerning which he gave every indication that he considered that he had received his full share of the movable property.
As shown in the memorandum given by Hermand to the attorney and' which was to be iised in the preparation of the partnership agreement, he, in his own handwriting, wrote that the assets in the names of himself and his two sisters, who, with him, were to form the partnership, would remain in their respective names and that *369 they all “agree that they have been paid in full their interest in the Succn. of Jacob Winsberg and agree to collate balances (and bind their heirs to collate balances) in the Succn. of Sarah S. Winsberg.” This reference is to the fact that in the computation made by the accountants, Hermand himself received $2,485.50 more than his share and that that was to be collated in the succession of his mother at her death, and it also showed that, though the others had received more than their share of the movable effects of the father’s estate, they too were to collate at the death of the mother.
This is interesting because counsel for plaintiff argues that if it be held that plaintiff is not entitled to an accounting of the movable effects of the estate of the father,, at least it should be held that the other heirs must, on the death of their mother, collate in the succession of the mother what each has received in excess of. his or her share of the estate of the mother. It is true that in the computation made by the accountants there are set out the amounts which each should “collate” at the death of the mother and that these amounts are set forth as having been “advances” by the mother, but the question of whether on the death of the mother they should be required to collate is not how before us. All that is presented here is the question of whether there must' be an accounting by the heirs of Jacob Winsberg for the movable effects left by him and we hold, as did the District Judge, that Hermand Winsberg received his full share of those movable effects and that plaintiff is not entitled to a further accounting.
The judgment appealed from is affirmed at the cost of appellant. .
Affirmed.