ESTATE OF PAUL M. VANDENHOECK, DECEASED, JEANNE S. VANDEN-HOECK, EXECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JEANNE S. VANDENHOECK, TRANSFEREE AND BENEFICIARY, PETI-TIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 111609, 111610. Promulgated September 30, 1944.

*Vernon L. Stover, Esq.,* for the petitioners.
*Brooks Fullerton, Esq.,* for the respondent.

126

OPINION.

MELLOTT, *Judge*: The first issue is whether all, or only half, of the fair market value of the 5,000 shares of Houdry stock, the 458 shares of Sun Oil Co., and the 1,000 shares of Socony-Vacuum Oil Co. is to be included in gross estate. The second is the value of all of the Houdry stock and the third is the transferee liability. The statutes particularly applicable to the first issue are set out in the margin.[5]

Briefly restating the facts, decedent, a citizen of Brazil domiciled in France, had in his possession at the time of his death shares of stock

[5] SEC. 811. [I. R. C.] GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

(a) DECEDENT'S INTEREST.—To the extent of the interest therein of the decedent at the time of his death;

*        *        *        *        *        *        *

(e) JOINT INTERESTS.—To the extent of the interest therein held as joint tenants by the decedent and any other person, or as tenants by the entirety by the decedent and spouse, or deposited, with any person carrying on the banking business, in their joint-names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth: *Provided,* That where such property or any part thereof, or part of the consideration with which such property was acquired, is shown to have been at any time acquired by such other person from the decedent for less than an adequate and full consideration in money or money's worth, there shall be excepted only such part of the value of such property as is proportionate to the consideration furnished by such other person: *Provided further,* That where any property has been acquired by gift, bequest, devise, or inheritance, as a tenancy by the entirety by the decedent and spouse, then to the extent of

in "domestic corporations," i. e., corporations chartered in the United States. (Sec. 862, I. R. C.) Some of the shares had been issued to him and registered in his name and some of them had been registered in his and his wife's names "as joint tenants with right of survivorship and not as tenants in common." All of the stock was reported in the return filed for his estate and respondent concedes that only one-half of the value of the stock registered in his name is to be included in gross estate. Relying upon section 811 (e), I. R. C., *supra*, however, he insists that the value of all of the stock registered in the joint names of decedent and his wife must be included in decedent's gross estate.

Petitioner, conceding that for the purposes of this case she is "Executor" of her deceased husband's estate (sec. 930, I. R. C., *supra*), contends that under the laws of France, the domicile of decedent, all of the property of decedent and his wife became community upon their marriage—no ante nuptial contract having been executed by them—and continued to be community until the dissolution of the marriage by the death of the decedent. She therefore contends that, regardless of the fact that some of the stock had been registered in their joint names, it was in fact community property, only one-half of which belonged to the decedent and passed at his death.

Respondent admits that the decedent was a citizen of Brazil domiciled in France, where he was married without a marriage contract; that under the laws of France all movable property owned prior to, and acquired after, marriage belongs to the marital community; that neither spouse may dispose of more than his own moiety, but that either may devise his moiety; and that on the death of either the surviving spouse retains his moiety. Notwithstanding these admissions, he contends that the situs of the stock in domestic corporations is in the United States under section 862 (a), I. R. C., *supra*; that under the law of the situs the stock must be regarded as held in joint tenancy; and, therefore, that its entire value must be included in the gross estate of the decedent unless the surviving joint tenant sustains her burden

---

one-half of the value thereof, or, where so acquired by the decedent and any other person as joint tenants and their interests are not otherwise specified or fixed by law, then to the extent of the value of a fractional part to be determined by dividing the value of the property by the number of joint tenants.

SEC. 862. PROPERTY WITHIN THE UNITED STATES.

For the purpose of this subchapter—

(a) STOCK IN DOMESTIC CORPORATION.—Stock in a domestic corporation owned and held by a nonresident not a citizen of the United States shall be deemed property within the United States; * * *

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

SEC. 930. "EXECUTOR", "NET ESTATE", "MONTH", "COLLECTOR".

When used in this subchapter—

(a) The term "executor" means the executor or administrator of the decedent, or, if there is no executor or administrator appointed, qualified, and acting within the United States, then any person in actual or constructive possession of any property of the decedent;

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

of proving that she furnished her proportionate part of the consideration paid.

As we view the case, we are not particularly concerned with the rule of *mobilia sequuntur personam*, discussed at considerable length by the respondent upon brief. The rule merely means that the situs of personal property, for purposes of taxation, is the domicile of the owner unless there is a statute to the contrary. *In re Wheeling Steel Corporation Assessment*, 177 S. E. 535. It is a rule of convenience—not an exclusive rule of universal application. *State of Colorado* v. *Harbeck*, 133 N. E. 357; 232 N. Y. 71. *Union Refrigerator Transit Co.* v. *Kentucky*, 199 U. S. 194, 206.

The stock in question clearly has a situs within the United States for purposes of the estate tax, *DeGaney* v. *Lederer*, 250 U. S. 376; *Burnet* v. *Brooks*, 288 U. S. 378; sec. 862 (a), I. R. C.; but there is no issue here as to situs. Petitioner admits that decedent's interest is includible in gross estate, the only question being the quantum of such interest. For the answer to this question we must look to the law of France. Cf. *Estate of Jose Simon*, 40 B. T. A. 651; *Herbert Marshall*, 41 B. T. A. 1064; *Estate of Jose M. Tarafa Y. Armas*, 37 B. T. A. 19; *Bank of America National Trust & Savings Association* v. *Rogan*, 33 Fed. Supp. 183; *Vogel* v. *New York Life Insurance Co.*, 55 Fed. (2d) 205; certiorari denied, 287 U. S. 604; *United States* v. *Goodyear*, 99 Fed. (2d) 523; *Sanchez* v. *Bowers*, 70 Fed. (2d) 715; Restatement of the Law of Conflict of Laws, ch. 7, secs. 290, 292, illustration 1; sec. 303, illustration 2.

In proof of her contention that the decedent died possessed of only a one-half interest in the property having a situs in the United States, petitioner introduced evidence of the laws of France governing the relations of the decedent and his wife as to property. The basic facts as to domicile have all been stipulated. The evidence, we think, which includes the opinion of lawyers learned in the French law, excerpts from the Civil Code of France, and decisions of the Court of Cassations, the Supreme Law Court of France, clearly justifies the finding that decedent and his wife were domiciled in France, that under the French law all the property here in issue was, at the time of the decedent's death, the community property of the decedent and his wife, and that each of them owned one-half thereof. That being so, the case is governed by *Estate of Jose Simon, supra.*

What has been said is dispositive of the issue. At the risk of unnecessarily extending the discussion, a few additional remarks may be made. When the decedent purchased stock in American corporations he did so with community funds. Respondent recognizes that this was so as to the stock standing in decedent's name. We do not understand that he is contending otherwise as to the stock registered in their joint

names. Section 811 (e), upon which he relies, was never intended to have the effect of changing the ownership of stock owned by nonresidents in the United States. Part III of chapter 3—Estate Tax (Sec. 860, et seq., I. R. C.) was enacted for the purpose of subjecting to tax "transfer of the net estate of every decedent nonresident not a citizen of the United States." (Sec. 860, I. R. C.) "Stock in a domestic corporation owned and held [emphasis supplied] by a nonresident not a citizen of the United States shall be deemed property within the United States." (Sec. 862, I. R. C.) The use of the conjunctive indicates that the ownership was at least as important in the eyes of Congress as the holding. We do not intimate that section 811 (e) may not be applied to "joint interests" of nonresidents who are not citizens of the United States. We merely hold that all this decedent owned or could own under the law of his domicile was one-half of the stock. Marsel v. Boyer and cases set out in footnote 3, supra. "State law (law of the domicile) creates legal interests and rights. The Federal revenue acts designate what interests or rights, so created, shall be taxed." Morgan v. Commissioner, 309 U. S. 78, 80. Cf. Sanchez v. Bowers, supra.

We agree with respondent that title to the property is not controlling. But that is not to say that the property need not be owned by the decedent. The inquiry always must be: What was the extent of the interest of the decedent which passed at his death? Klein v. United States, 283 U. S. 231; Helvering v. Hallock, 309 U. S. 106. Ownership of community property during continuance of the marriage, and not the power of control and disposition, has always been regarded as the controlling factor in applying Federal revenue laws. Cf. Talcott v. United States, 23 Fed. (2d) 897; certiorari denied, 277 U. S. 604; United States v. Malcolm, 282 U. S. 792. Where the interests of the spouses are present and equal, both are held to have possession and enjoyment of the community property and only one-half may be included in the gross estate of the husband. United States v. Goodyear, supra. (See, however, the change made by the Revenue Act of 1942 as to estates of decedents dying after the date of its enactment.)

In France, as in the community property states, the husband has the management and control of the community property, but in the event of the abuse of such management or the failure to exercise it properly the wife may obtain a separation of the community property and assume the management of her portion without effecting a dissolution of the marriage. From these and other facts in evidence we conclude that under the French law the interest of the wife in the community property is present and equal to that of her husband and that the stock held by decedent and his wife as joint tenants was in

fact community property in which the decedent held only a one-half interest. We hold therefore that only one-half the value of such stock having a situs in the United States is includible in the gross estate of the decedent.

In our judgment the same result would obtain if we consider that the stock was owned and held by petitioner and the decedent as joint tenants, as contended by the respondent. Since it was purchased with community funds, one-half the consideration was furnished by petitioner; therefore, only one-half of the value thereof is includible in gross estate under section 811 (e), *supra.*

In computing the deficiency respondent valued the Houdry stock at $85 per share. This is the mean between the high and the low bid prices on the. dates nearest to the death of the decedent. No sale was made on the date of his death. A sale of 3 shares at 94 was made by one broker to another broker on the day before and a sale of 7 shares at 87 was made to the same broker by another broker three days later. The 20 sales made during the month of March—largely from one broker to another—averaged approximately 7 shares per transaction. The total shares sold between February 29 and May 29, 1939, were only 751, 502 of which were in small lots from one broker to another broker. Since the aggregate outstanding stock was 330,000 shares, it is obvious the number changing hands was proportionately insignificant. We, of course, recognize that transactions between actual buyers and sellers, dealing at arm's length on a fair and unrigged market, is cogent evidence of value. But where, as here, the transactions are so insignificant and the block to be evaluated is substantial, other evidence of value may appropriately be considered.

Evidence supporting a much greater value than the book value of the stock (approximately $10 per share) includes the ability of the corporation's president, Houdry, the corporation's strong patent position, the efficacy of its process, the value of its patent rights, and its prospects, which, at least until 1938, were bright. Offsetting this is the limited source of its future income, dependent, as it was, largely upon its ability to sell additional licenses and the obvious dearth of prospective licensees. (The cost of a plant to utilize the process commercially was approximately $1,000,000.) The subsequently demonstrated fact that additional sales could be made only at greatly reduced prices and. the substantial decline in income in 1939 indicate that its officers were not unduly pessimistic in appraising its condition at the end of 1938 as not very promising. While it received substantial income during the years 1935 to 1939 from the sale of licenses, there was but small probability any such large amounts would be received in later years. Its service and research, however, with its attendant expense, had to continue. While the income had been substan-

tial during four of the eight years of its existence, the dividends paid during the four years preceding the death of the decedent had averaged less than $3 per share per annum. The average earning per share during the same period had been $3.14 per share; but if the earnings during the seven years of the existence of the corporation preceding decedent's death are averaged, the earning per share becomes $1.79. On the same basis its dividend record, over the same period, was $1.67 per share.

Other evidence, directly supporting the value of $40 per share which we have found, may be found in the testimony of an officer of the Houdry company and of the Sun Oil Co. He had had considerable experience with the process, being a chemical engineer and having become connected with the Houdry company shortly after its organization. He had conducted the negotiations leading to the licensing agreement with Socony-Vacuum. As a director of the Sun Oil Co. he recommended the purchase by it, in 1939, of additional shares at $40 per share, although most of the shares owned by this company had been purchased by it in earlier years at $10 per share. The number of shares purchased in 1939 is not disclosed by the record.

The valuation of stock, like many questions of fact, can not be completely rationalized. Cf. *Estate of Daniel Guggenheim*, 39 B. T. A. 251, 293, and cases cited. (Modified, 117 Fed. (2d) 469, certiorari denied, 314 U. S. 621.) Upon the whole record, we are of the opinion that the Houdry stock had a value of $40 per share on the basic date, and finding to that effect has been made. It is now so held.

The value of the 458 shares of Sun Oil Co. stock is not in issue. As shown in our findings the value of the 1,000 Socony-Vacuum Oil Co. shares was increased by the respondent from $11,937.50 to $12,500.00. Since no evidence was adduced indicating that the value determined by the respondent is excessive, it is approved.

The last question is whether petitioner is liable as a transferee. Petitioner says the question "is moot since * * * [she], as the alleged transferee and beneficiary of the estate or property of * * * [the deceased], is liable for the tax * * * only if the Estate * * * does not pay it." She seems to be laboring under the impression that the statute, shown in the margin,[6] can not be applied "be-

---

[6] SEC. 900. TRANSFERRED ASSETS.

(a) METHOD OF COLLECTION.—The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this subchapter (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds) :

(1) TRANSFEREES.—The liability, at law or in equity, of a transferee of property of a decedent, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed by this subchapter.

* * * * * *

(e) DEFINITION OF "TRANSFEREE".—As used in this section, the term "transferee" includes heir, legatee, devisee, and distributee.

cause there has been no final determination of the Federal estate tax against the estate * * * nor has the estate failed to pay such tax." She asserts that she, "as acting executor," intends to pay the tax found to be due and "there can not be any collection of such tax from the Estate and also from her as transferee and beneficiary."

While we agree with petitioner that the tax can not be collected twice—and we are satisfied that no attempt will be made to exact a dual payment—and while we have no reason to doubt that she will pay the tax as acting executrix, it can hardly be said that the transferee liability is moot. We think, therefore, it must be determined.

The basic facts, all of which have been stipulated, need not be repeated. Briefly stated, petitioner, as provided by her deceased husband's will, took possession of all of his property under a claim of ownership. It is still in her possession. Admittedly it had a value in excess of the estate tax due. Technically, no estate is in process of administration, although both parties here have admitted the applicability of section 930, since petitioner is "in actual possession" of the property of the decedent. It is true, of course, that petitioner, as "acting executor" has not gone through the form of setting over to herself, as beneficiary or legatee, any part of the property; but under the present facts that is immaterial.

No opprobrium is necessarily attached to a finding that property has been received under such circumstances as to make the recipient liable at law or in equity for a tax due. "The obligation to be enforced is the liability for the tax." *Phillips* v. *Commissioner*, 283 U. S. 589. All of the property of the decedent is in petitioner's possession. Its value is in excess of the tax. Thus there has been a transfer, at or subsequent to decedent's death, which left his estate insolvent. The circumstances recited are sufficient, in our judgment, to make petitioner liable in equity for the tax. Perhaps her present admission that she expects to pay the tax from the property, which she tacitly admits she is holding in trust, may also make her liable at law for the tax. It is unnecessary to draw any fine-spun distinctions between the liability at law and the liability in equity. If either is shown to exist— the other facts being present, i. e., a transfer without consideration, exhausting the assets and the amount received being in excess of the tax liability—the burden resting upon the Commissioner has been sustained. *Phillips* v. *Commissioner, supra; United States* v. *Garfunkel,* 52 Fed. (2d) 727.

In our judgment the petitioner in Docket No. 111610 is liable as a transferee for the estate tax of her deceased husband in the amount determined in Docket No. 111609.

*Decision will be entered in each case under Rule 50.*