ESTATE OF JEANNE LEPOUTRE, DECEASED, RAYMOND HENRI LEPOUTRE, ADMINISTRATOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5023–70.   Filed April 22, 1974.

*Milton Young, Howard Kaplan,* and *Lanny M. Sagal,* for the petitioner.

*Ronald A. Wagenheim* and *Curtis W. Berner,* for the respondent.

OPINION

SCOTT, *Judge:* The Commissioner determined a deficiency in Federal estate tax of the Estate of Jeanne Lepoutre, deceased, in the amount of $84,295.54. Petitioner, the administrator of the estate, was a resident of Brooklyn, New York, at the time of the filing of the petition in this case. The estate tax return of Jeanne Lepoutre's estate was filed with the district director of internal revenue, Hartford, Conn.

Some of the issues raised by the pleadings have been disposed of by agreement of the parties, leaving for decision:

(1) Whether one-half of the community property of decedent and her husband is includable in decedent's estate under section 2033, I.R.C. 1954,[1] and

(2) If any portion of the community property is includable in decedent's estate, whether the value of the "usufruct," an estate for a term ending upon the death or sooner remarriage of the surviving husband, reduces the interest in community property includable in decedent's estate under section 2033.

All the facts have been stipulated and are found accordingly.

Jeanne Lepoutre (hereinafter referred to as decedent) died intestate on February 22, 1966, a resident of Redding, Conn. Letters of administration on decedent's estate were issued on August 12, 1966, to Raymond Henri Lepoutre, son of decedent, by the Probate Court for the District of Redding, Conn. Decedent, whose maiden name was Jeanne Dansette, married Raymond Joseph Marie Lepoutre (hereinafter referred to as husband) on February 18, 1936, in Armentieres, France. Both decedent and her husband were residents and citizens of France from the date of their birth in 1914 and 1911, respectively, until 1946. In 1946 they emigrated to the United States and established residence in Woonsocket, R.I. They became naturalized citizens of the United States in 1952, and in 1963 moved their residence and domicile to Redding, Conn. Decedent and her husband remained married until decedent's death in the State of Connecticut on February 22, 1966. Decedent was survived by her husband and five children of their marriage.

On February 15, 1936, prior to their marriage, decedent and her husband, together with their respective parents, appeared before Raymond Dissaux (a French notary, such notary being a public official and a lawyer), and entered into an agreement (hereinafter referred to as the antenuptial agreement) with respect to the effect of the contemplated marriage on the respective property rights of decedent and her husband. By reason of the French nationality and domicile of all parties to the antenuptial agreement, the laws of France, particularly the French Civil Code, governed the validity and effect of this agreement. Except as specifically stated to the contrary in the antenuptial agreement, the provisions of French law relating to community property govern the interests of the spouses in the community property under the antenuptial agreement.

Under the provisions of the French Civil Code, a bride and bridegroom may stipulate as to their property rights as spouses by an ante-

---

[1] All statutory references are to the Internal Revenue Code of 1954.

nuptial agreement, provided they do so before a notary prior to the wedding ceremony. Accordingly, the antenuptial agreement was valid in all respects and binding upon decedent and her husband in accordance with its terms.

Under the provisions of the French Civil Code applicable at the time of decedent's and her husband's marriage, the terms of this valid antenuptial agreement were not subject to amendment after the marriage. By amendment to this code, effective February 1, 1966, the terms of this valid antenuptial agreement became subject to amendment after the marriage by the mutual consent of the spouses with court approval. However, the antenuptial agreement between decedent and her husband was not amended at any time.

The effect of the provisions of the antenuptial agreement [2] was to divide the property of decedent and her husband into two categories, as follows:

(a) "Separate Property" constituting the assets owned by each spouse, respectively, at the time of the marriage, and thereafter acquired by them, respectively, by gift, inheritance, exchange of any such property, or reinvestment of the proceeds of sale thereof; and

(b) "Community Property" constituting property acquired by either of the spouses during the marriage and resulting "from their labor" and from the savings of the income of their property.

Under the provisions of the antenuptial agreement, on the death of either spouse, the surviving spouse would have the following rights in the community property of the marriage:

(i) ownership in fee of one-half thereof; and

(ii) a usufruct in the remaining one-half thereof with the remainder therein vested in the children of the marriage.

As used herein, the term "usufruct" means an estate for a term ending upon the death or sooner remarriage of the survivor.

---

[2] The agreement provides in part as follows:

ARTICLE ONE. Marital System.

The future spouses adopt as bases of their marriage the marital system of community of property reduced to earnings and acquisitions as established by Articles 1498 and 1499 of the [French] Civil Code.

Accordingly they exclude from the community of property all their present and future capital assets and debts of each of them, both present and future.

The said community of property shall therefore consist only of the earnings and acquisitions made by the spouses together or individually during the marriage and coming both from their labor and from the savings made from the income and revenue from their property.

ARTICLE NINE. Partitioning of the Community of Property.

In case of dissolution of the community of property by the death of one of the spouses, the survivor of them shall have the right, with or without child from the intended marriage, by way of marriage agreement and in accordance with Articles 1520 and 1525 of the [French] Civil Code, to full ownership of one-half and to the usufruct (life estate) until remarriage of the other party, of one-half of all the real and personal property which shall constitute part of the community of property the bare ownership of which shall devolve upon the heirs of the first of them to die.

The items constituting the community property under the antenuptial agreement were either acquired while decedent and her husband were domiciled in France or are directly traceable to such property and such community property was derived either from the earnings of decedent's husband or the earnings of the community property. Generally, the title of such community property was registered in the name of or held by decedent's husband at the time of decedent's death.

The aggregate fair market value at the date of decedent's death of the items constituting the community property under the antenuptial agreement was $719,731.27. No amount was included in decedent's estate on the estate tax return for the value of any of the items constituting the community property.

Respondent in his notice of deficiency increased the taxable estate as reported in decedent's Federal estate tax return by one-half the value of the "community property."

Petitioner contends that decedent was not the owner of any portion of the community property under the matrimonial regime created by the antenuptial agreement. Petitioner argues that under the agreement decedent possessed a mere expectancy of ownership with regard to her portion of the community property which terminated upon her death with her husband surviving. Petitioner further argues that any rights conferred upon decedent under the French law and the antenuptial agreement were not sufficient to warrant the inclusion of any part of the community property in decedent's gross estate as such property was not derived from her efforts or property, was not subject to her positive control during her lifetime, and was not within her power of testamentary disposition at her death. In the alternative, petitioner contends that if decedent had a sufficient interest in the community property to require the inclusion of some portion of such property in her gross estate under section 2033, there should be excluded therefrom the value of her husband's usufruct since under the French Civil Code the usufruct is acquired by a right conferred by law and not by inheritance. Petitioner also contends that decedent's husband had an absolute existing right to the usufruct in the community property before decedent's death and therefore it should not be included in decedent's gross estate.

Respondent contends that decedent's interest in the community property is governed by French law and that under French law at the time of her death decedent and her husband each owned an equal and undivided one-half interest in the community property. It is respondent's position that even though the antenuptial agreement is valid and binding under French law, the provisions of that agreement do not change decedent's ownership of one-half of the community

property at the time of her death or the transfer of her one-half of the community property by her death.

Section 2033 provides for the inclusion in a decedent's gross estate of "the value of all property to the extent of the interest therein of the decedent at the time of his death."

Section 2001 imposes a tax "on the transfer of the taxable estate," which is the gross estate less the exemptions and deductions provided by law of every decedent citizen or resident of the United States.

The legal interest of a decedent in property is determined by the law of decedent's domicile and whether that interest is includable in decedent's gross estate is determined by the Federal statute as stated in *Morgan* v. *Commissioner*, 309 U.S. 78, 80–81 (1940) :

State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed. Our duty is to ascertain the meaning of the words used to specify the thing taxed. If it is found in a given case that an interest or right created by local law was the object intended to be taxed, the federal law must prevail no matter what name is given to the interest or right by state law. [Fn. omitted.]

See also *Ramon R. Santiago*, 61 T.C. 53 (1973).

Therefore in order to determine whether decedent had an interest in one-half of the community property which would be includable in her estate under section 2033, we must first determine what interest she had in the property by applying local law and then determine whether that interest is one that is includable under section 2033 in the taxable estate transferred at her death.

A threshold issue is whether the courts of Connecticut, the State in which decedent was domiciled at her death, would apply their own law or the law of France in determining the legal interests of decedent in the community property. The parties agree that the law of France would be the applicable law in determining the nature of the community property owned by decedent and her husband at the date of her death. We agree with their conclusion since they have stipulated as a fact that all the community property, one-half of which respondent determined to be includable in decedent's gross estate, was acquired while decedent and her husband were citizens and residents of France or as a reinvestment of the proceeds of such property. See *Estate of Jose Simon*, 40 B.T.A. 651 (1939). As stated in *Herbert Marshall*, 41 B.T.A. 1064, 1069 (1940), the established rule in most States is that of California which is that "the character of personal property is to be determined by the law of the domicile of its owner at the time of acquisition, irrespective of the law of any subsequent domicile which may be acquired." Both parties accept this as the law of Connecticut and nothing to the contrary has come to our attention.

Under the provisions of articles 1387 and 1527 of the French Civil Code (hereinafter C.C.), future spouses may agree as to their marital

property rights, provided they do so prior to their marriage and before a notary as required by C.C. article 1394. Petitioner and respondent agree decedent and her husband complied with the requirements of C.C. article 1394. Accordingly, the antenuptial agreement was valid under French law.

Under C.C. article 1391 [3] the spouses could declare in a general way the matrimonial regime they wished to govern their marital property rights. Decedent and her husband chose in their antenuptial agreement [4] to be governed by the system of community property reduced to "acquests" pursuant to C.C. articles 1498 and 1499. Under C.C. article 1498, the community property consists only of the "acquests made together or separately during the marriage by the husband and wife and resulting as well from the common work as from the savings produced by the revenue and income of the property of the husband and wife."

It is clear therefore that under the regime of community property of "acquests" the origin of the common property is irrelevant, except, of course, to establish that it is indeed common property and not separate property.[5] The record shows that the community property was derived either from the earnings of decedent's husband since the marriage celebration or the earnings of the community property itself. Both the provisions of French law as above noted and of the antenuptial agreement are clear that property so acquired is community property. In *Estate of Paul M. Vandenhoeck*, 4 T.C. 125 (1944), we held that under French law [6] the interest of the wife in the community property was present and equal to that of her husband and the husband and wife each held a one-half interest in the community property, even though the husband had the management and control over the community property. Therefore, we concluded that only one-half of the value of the community property was includable in the decedent husband's gross estate pursuant to the provision of the Code which is now section 2033.[7]

The fact that the husband has the power of administration over the community property or holds the title to community property in

---

[3] Now C.C. art. 1393 (1966).

[4] See fn. 2 *supra*.

[5] See Amos & Walton, Introduction to French Law 274 (3d ed.), where the community of "acquests" is stated to include (1) the earnings of both spouses, (2) the income of their separate property, and (3) the property which either spouse acquires during marriage other than by gifts or inheritance.

[6] The Court found C.C. arts. 1423, 1441, 1443, 1449, and 1474 pertinent to its decision. These articles are basically the same as those which prevailed in France at the time the agreement here involved was signed by the spouses and at the time of decedent's death. Art. 1474, however, had become art. 1475 at decedent's death.

[7] This holding is supported by the commentators on French law. (See Amos & Walton, Introduction to French Law 274–275 (3d ed.); 3 Planiol, Civil Law Treatise, Nos. 767 and 905.)

his name has not been deemed to give him a greater interest than the wife in the common estate where otherwise their interests in the community property are present and equal. *Poe* v. *Seaborn*, 282 U.S. 101 (1930). Under our holding in *Estate of Paul M. Vandenhoeck, supra,* it is clear that respondent properly included one-half of the community property in decedent's estate unless the rights of decedent and her husband were so altered by the antenuptial agreement as to cause decedent not to have an interest in the community property within the meaning of section 2033 which was transferred at her death. Petitioner argues that the effect of the antenuptial agreement was to cause decedent not to have a "vested" interest in the community property and therefore made her interest comparable to that of a wife under New Mexico law. The courts held that under New Mexico law, prior to its recent amendment, a wife had insufficient interest in community property for a portion of it to be includable in her estate since if she predeceased her husband her interest by statute belonged to him, *Hernandez* v. *Becker*, 54 F. 2d 542 (C.A. 10, 1931), but if the husband predeceased the wife one-half of the community property was includable in his gross estate. *Hurley* v. *Hartley*, 379 F. 2d 205 (C.A. 10, 1967).[3]

Petitioner cites the *Becker* and *Hurley* cases for the proposition that property is not includable in the estate of a decedent if that decedent lacks the testamentary power of disposition of the property. However, those cases refer only to the lack of such power under the law of the State and deal more with whether there was any interest of the wife that passed to the husband upon the death of the wife. The Tenth Circuit in *Hernandez* v. *Becker, supra* at 549, stated as follows:

Here the interest of the wife in the community estate does not come within the purview of any specific provision of the statute, and no estate passed or was transferred upon the wife's death. On the contrary her interest in the community estate upon her death ceased and terminated, and the whole of the community estate, by virtue of the statute and the conveyance or transfer of the property to the community, belonged to, rather than passed to the husband. At the death of Anna Becker no interest in the community estate held by her passed to her husband. The interest which she held immediately prior to her death was extinguished by that event. May v. Heiner, 281 U.S. 238, 243, 50 S.Ct. 286, 74 L. Ed. 826, 67 A.L.R. 1244.

We conclude that no estate was transferred on the death of the wife, either within the meaning of the general language of section 401, supra, or the specific language of sections 402 (a), (b), or (d), supra.

---

[3] Petitioner recognizes that under the antenuptial agreement both spouses made the same disposition of the community property where the community was dissolved by death. Petitioner states that this facet in this case should not be considered since we have only the case of the wife's estate and not that of the husband. Petitioner suggests that perhaps because the community property came mostly from the husband's earnings or because he managed it, his interest differed from the decedent's. However, as pointed out in this opinion, that is not the French law and in fact petitioner does not contend it is.

We do not hold that Congress could not impose a tax on the privilege of the passing to the husband of definite and important accessions to his property rights in the whole community estate on the death of the wife, of which her death is the generating source, but we hold that it has not done so.

This construction will not result in any part of the community estate escaping the burden of the tax. On the death of the husband, leaving the wife surviving, the whole community estate is subject to administration, to the payment of charges against his estate and the expenses of its administration, and one half passes to the wife and the other half according to the husband's will or the statute of descent. The whole is therefore subject to distribution as a part of his estate. On the death of the husband, after the death of the wife, the whole community estate which belonged to the husband without administration, of which he dies seized, is subject to administration, subject to charges against his estate and the expenses of its administration, and subject to distribution as a part of his estate either in accordance with his will or of the statute of descent. Therefore, on the death of the husband it is transferred within the meaning of section 401, * * *

This statement from the *Becker* case is quoted and relied on in the *Hurley* case. It is therefore apparent that the holding with respect to property under the New Mexico law is that no estate passes at the wife's death since under the statutes of that State the property belonged to the husband until his interest in it was terminated by his death.

The reasons we set forth in *Estate of Paul M. Vandenhoeck, supra*, namely, that under the community regime in France the spouses are deemed at all times coowners of an undivided half of all property and that, although the husband has the management and control of the community property, the wife may obtain, in the event of the abuse of such management or the failure to exercise it properly, a separation of the community property and management of her portion without effecting a dissolution of the marriage; as well as the fact that under the law of France a wife has the power of testamentary disposition of her share of the community property under C.C. article 1423 [Planiol, Civil Law Treatise (an English translation by the Louisiana State Law Institute), vol. 3, part 1, sec. 1042], distinguish the rights of decedent in the community property in this case from the rights of a wife in community property under New Mexico law.

It is clear that, unless the provisions of the antenuptial agreement, investing the surviving spouse with one-half of the community estate in fee ownership and with the usufruct (life estate) until remarriage in the other half, so limit decedent's rights in the property as to cause it not to be transferred to the husband by her death, respondent has correctly included one-half of the property in decedent's estate. There is nothing in this contract which takes away any of the rights of decedent in the property during her lifetime. The essence of the contract was a testamentary disposition by each spouse. The sections of the French Civil Code, articles 1520 and 1525, referred to in

the contract, permit the spouses in an antenuptial contract to modify the equal partition of community property established by law upon the death of one of the spouses.[9] Decedent and her husband, in their antenuptial contract, did in effect provide for equal partition with each leaving to the other a life estate in the one-half of the community property belonging to the first to die. This provision of the antenuptial contract was valid under French law and prior to 1965 was irrevocable. After 1965 it was revocable only by mutual agreement of the spouses and court approval. However, the contract, by its very terms, was applicable only in case of dissolution of the community property by the death of one of the spouses. It gave no right in decedent's property to her husband which was not otherwise given to a husband under the French law prior to decedent's death. Interpreting this contract under the French law, but applying the Federal estate tax statutes to the property interests existing under French law under this contract, in our view decedent had at the time of her death an equal interest in the community which is an interest as described in section 2033, and although decedent had contracted prior to her marriage that if she predeceased her husband, he would in effect take a life estate in her one-half of the property, it was her death that occasioned the transfer of her interest in the property to her husband and children. We therefore sustain respondent's inclusion in the gross estate of decedent's interest in the community property. The rationale of the decisions of the Supreme Court in *Klein* v. *United States*, 283 U.S. 231 (1931), and *Helvering* v. *Hallock*, 309 U.S. 106 (1940), though dealing with sections of the estate tax law other than section 2033, strongly support this conclusion.

Petitioner in the alternative, argues that if we should determine that decedent had a sufficient interest in the community property to require the inclusion of some portion of that property in her gross estate under section 2033, there should be excluded therefrom the value of her husband's usufruct in such included property. Petitioner first argues that since under French law a surviving spouse is entitled

---

[9] Arts. 1520 and 1525 of the French Civil Code prior to the 1965 law, which were not changed in substance by that law, provide as follows :

Art. 1520. The husband and wife may modify the equal partition established by law, either by giving to the survivor or his or her heirs, a share less than half of the community, or by only giving to such survivor a fixed sum for all community rights or by stipulation that in certain cases the whole community shall belong to the surviving husband or wife or to one of them only. Civ. C. 1474, 1497–7°, 1521 et seq., 1524 et seq.

Art. 1525. The husband and wife have the right to agree that all the community property shall belong to the survivor or to one of them only, but the heirs of the other can then take back the contributions or the capital derived from their principal and which have fallen into the community.

Such an agreement is not considered a liberality subject to the rules relating to donations, either as to substance or as to form, but simply a stipulation in connection with the marriage and between the contracting parties. Civ. C. 931, 1091 et seq., 1394, 1516, 1527.

by right to a usufruct in the community property, the value of the usufruct which decedent's husband received should not be included in decedent's estate since it came to decedent as a right of law and not as a testamentary disposition. Petitioner relies on Louisiana cases discussing State inheritance tax concepts such as *Succession of Chauvin*, 260 La. 828, 257 So. 2d 422 (1972); *Succession of Baker*, 129 La. 74, 55 So. 714 (1911); *Succession of Bellinger*, 229 So. 2d 749 (La. Ct. App. 1969).

Petitioner recognizes that in an early case, *Liebman* v. *Fontenot*, 275 F. 688 (W.D. La. 1921), it was held for Federal estate tax purposes the value of the usufruct in Louisiana is not used to reduce the value of the community property of a deceased spouse includable in that spouse's estate and there has been no subsequent change in the Federal law. Petitioner argues that this is erroneous law but we do not agree. The community property interest of each spouse exists as a matter of Louisiana law during their marriage, but the usufruct comes to the surviving spouse upon the death of the other. In our view, regardless of what may be appropriate for Louisiana inheritance tax, the fact that the law may provide for the usufruct does not cause the usufruct not to be a transfer taking effect at death just as is any other statutory interest, such as dower or courtesy in a common law State, to which a spouse is entitled by law. This is the holding of *Liebman* v. *Fontenot*, *supra*. As there pointed out, the estate tax is a tax on the transfer of the estate and not comparable to a State inheritance tax on specific heirs.

Petitioner finally argues that the usufruct should be excluded from decedent's community property since under the antenuptial agreement which was valid under French law, decedent's husband's usufruct could not have been defeated by any power of disposition of property in decedent.[10] In effect this argument is the same argument

---

[10] The last paragraph of art. 12 of the antenuptial contract provided:

The surviving spouse must opt between the usufructs (life estates) to the present contract and the statutory usufruct stipulated in Article 767 of the Civil Code; he or she must make his or her intention in this respect known within 40 days before the close of the inventory.

Art. 767 of the French Civil Code provides:

(Law of March 9, 1891). When the decedent leaves no relatives of a degree entitling them to inherit, and no natural children, the property of the succession belongs absolutely to the surviving husband or wife not divorced and against whom no judgment of separation from bed and board has become final.

(Law of April 26, 1925). The surviving husband or wife not divorced who does not inherit the full ownership and against whom no judgment of separation from bed and board has become final has upon the succession of the predeceased one a right of usufruct which is:

Of one-quarter, if the decedent leaves one or several children born of the marriage;

Of the smallest portion of a legitimate child, which portion shall not exceed one-quarter, if the decedent has children born of a previous marriage;

Of one-half if the decedent leaves natural children or lawful issue of natural children, brothers and sisters, descendants of brothers and sisters or ascendants.

Of the whole in all other cases, whatever may be the number and the relationship of the heirs.

petitioner made in support of his contention that none of the community property was includable in decedent's estate. As we have previously stated, the antenuptial agreement provided for rights in the surviving spouse only upon the death of the other spouse and therefore under the Federal estate tax law was in the nature of a testamentary disposition and a transfer of an interest in property at the death of the first to die.

Since certain issues have been disposed of by agreement of the parties,

*Decision will be entered under Rule 155.*