96 So.2d 44

Mrs. Mary L. Schneider WINSBERG, Administratrix of the Estate of Hermand Woodward Winsberg,

v.

Mrs. Sarah Silverman WINSBERG, Mrs. Stella Winsberg Levy, Mrs. Jessie Winsberg Bluhm, and Winfred J. Winsberg.

No. 43070.

May 6, 1957.

Rehearing Denied June 10, 1957.

Solomon S. Goldman, New Orleans, for defendants and relators.

Arthur B. Hammond, Jr., New Orleans, for plaintiff and respondent.

FOURNET, Chief Justice.

This suit was filed on behalf of the minor, Kathleen Hilda Winsberg, by her mother, as her tutrix, and as administratrix of the succession of the minor's late father, Hermand W. Winsberg, against her paternal grandmother and her uncle and aunts, heirs of Jacob Winsberg, the deceased father of Hermand W. Winsberg, for an accounting of her grandfather's estate; and is now before us on a writ of certiorari to review the judgment of the Court of Appeal affirming the judgment of the District Court awarding to plaintiff the sum of $1,460. See 87 So.2d 362.

Jacob Winsberg died testate on May 8, 1937, leaving all he died possessed of, consisting wholly of community property, to his wife, Mrs. Sarah Silverman Winsberg. Surviving him also were two daughters, Mrs. Stella Winsberg Levy and Mrs. Jessie Winsberg Bluhm, and two sons, Winfred J. Winsberg and Hermand Woodward Winsberg, all born of the union. His estate consisted of certain movable property and immovable property, the latter bearing municipal numbers 4304–06 Magazine Street in New Orleans, where Winsberg's Store was conducted—a small enterprise engaged in the sale of shoes. The legacy to the widow having been reduced to the disposable one-third, the heirs were placed in

possession of the estate by judgment of court, the widow being recognized, as surviving spouse in community, to be the owner of an undivided half and, as legatee, to be entitled to ownership of an undivided two-twelfths of all property left by the decedent; and the four children being recognized as his sole heirs at law and entitled as such to the ownership each of an undivided 1/12th of the said property. No mention was made of a usufruct in favor of the widow either in the will or in the judgment of possession. There was no actual division of the assets which, aside from the real estate, consisted mainly of the stock of shoes, fixtures, etc., contained in the store, and the business was continued by the son Winfred, assisted by his mother and sisters. Hermand took no part in the business; after completing law school he had moved to North Carolina where he was employed by a judge, and later as a salesman traveling the Carolinas for a shoe manufacturer. He was so engaged at the time of his father's death and for a period thereafter, and on June 20, 1937, addressed a letter to his brother expressing the feeling that the business should be turned over to him (Winfred) by October 1st and offering to transfer his own one-twelfth

interest without compensation therefor, acknowledging that he had already received from his father more than would be due him.

In 1939 the building which had housed the store, being in dilapidated condition, was demolished, and under Winfred's leadership and supervision a new brick structure was built with proceeds of life insurance received by the widow, Sarah S. Winsberg. At that time an informal partnership agreement [1] was had between the mother, her son Winfred, and the two daughters; inventories were to be increased, lines of ready-to-wear were to be added to shoes. Under the new organization a profit was consistently shown, this being principally devoted to increasing the stock and to expanding; about four years later, when the inventories were considered to be sufficiently large, the profits were used for the purchase of assets in the names of the respective partners. In the summer of 1945 Hermand was released from service in the Army and Winfred, wishing to get out of the store and go into the business of wholesale selling of shoes, encouraged Hermand to take over the store.

Hermand then undertook a division and settlement of the movable assets of his

1. While Hermand was not a member of the partnership, in case of illness or operations his expenses were taken care of, as were those of other members of the family in like circumstances, from the proceeds of the business; and while he was in the service his drafts for $40 a week were honored by the brother, Winfred. It also appears that during Hermand's absence, shares in the Sixth District Building and Loan Association, amounting to $2,500, were bought in his name when the profits from the business were divided among the partners.

father's succession, as reflected by a memorandum statement in his own handwriting. According to his figures, which he submitted as the basis for an auditor's report dated December 31, 1945, Jacob Winsberg's share of the community, including the real estate, had a value as of the date of his death of $18,423, of which the widow's interest was one-third and that of the heirs one-sixth each. Another schedule in the same report, prepared from figures gathered and evaluated by Hermand, showed a complete inventory of the family's worth, indicating total assets of $234,995.27, with movable assets held in the name of each of the children, Hermand having received $5,556, Winfred, $67,438.77, Stella, $23,893, and Jessie, $24,412.50. From these amounts were subtracted the inheritance of each child from the father's succession ($3,070.50), leaving various sums to the credit of each. It is pertinent to note that Hermand showed his mother to be the owner of the real estate at 4304–06 Magazine Street as well as half of the cash in bank and on hand (the other half being shown as Winfred's), and of all the store's merchandise and fixtures.

Hermand also proposed that he and his sisters should form a partnership to run the business, and he drew up an agreement, dated February 1, 1946, in which Mrs. Sarah S. Winsberg sold to him and his two sisters in equal, undivided shares, "the business she operates at 4304–06 Magazine Street, New Orleans, La., known as 'Winsberg's,' as a going concern," for the consideration of $60,323.62, "entirely on credit, and with the understanding that such purchasers shall never be required to pay any part of the purchase price during the lifetime of the said Mrs. Sarah S. Winsberg, but that the debt shall immediately mature upon their mother's death and thereupon each purchaser shall be required to account therefor, without interest, by collation to their co-heirs in the succession of their mother, each for one-third of the said purchase price. Contemporaneously with the signing of this agreement, the said Mrs. Sarah S. Winsberg, *as owner and usufructuary,* has leased to the purchasers of the said business the real property wherein the business is conducted at 4304–06 Magazine Street, New Orleans, La. * * * " (Emphasis supplied.)

On June 24, 1947, Hermand married the plaintiff herein; their child was born on May 5, 1948, a few months after his death which had occurred in February of that year. This suit followed on June 9, 1948, for an accounting of the estate of Jacob Winsberg for the period from May 8, 1937 (the date of his death) through December 31, 1945, the allegation being that Hermand never received his proportionate share "of the incomes, emoluments, salaries and other perquisites" of the said estate, "and more particularly his share from Winsberg's

Store." Named as defendants were the mother, brother and two sisters, who in answer denied that any accounting was due plaintiff, averring that Hermand had received his full portion of the estate of his father and that he had no interest in the business known as Winsberg's Store prior to January 1, 1946. At the close of the trial on the merits the Court ruled that plaintiff was only entitled to an accounting of the real estate for the period requested, and ordered the defendants to render such an accounting. The information was offered in a note of evidence subsequently taken— itemized rentals on the old building prior to 1939, on the new building thereafter, less taxes, insurance, maintenance and repairs— and counsel for defendants, without conceding that plaintiff was entitled to any sum whatever, agreed that if an amount were due it would be $1,460; it was stipulated between counsel that defendants waived any claim for interest to the mother upon her investment, and plaintiff waived any interest upon rents that "may have become due." Judgment was then rendered against the defendants in solido for that sum and, as stated above, was affirmed by the Court of Appeal.

The sole question posed for our determination in reviewing the Court of Appeal decision is whether or not the share of the community real estate inherited by Hermand Winsberg is subject to a usufruct in favor of his mother.

The plaintiff contends that under Article 916 of the Civil Code,[2] as interpreted by this Court in the case of Forstall v. Forstall, 28 La.Ann. 197, the property passed to the children in full ownership; and in any event the defendants, who accepted purely and unconditionally the succession of Jacob Winsberg, are concluded by the judgment therein decreeing the widow to be owner of an undivided two-twelfths of the property left by the deceased in addition to her interest as surviving spouse in community, and the children to an undivided one-twelfth each, there being no mention of usufruct anywhere in their own pleadings or the judgment; and since the widow was instrumental in obtaining the judgment on the basis alleged in her petition, she renounced all rights in conflict with the judgment for which she prayed and is estopped from attacking that judgment, citing Civil Code Article 2291 and jurisprudence of this Court. The defendants, on the other hand,

---

2. "In all cases, when the predeceased husband or wife shall have left issue of the marriage with the survivor, and shall not have disposed by last will and testament, of his or her share in the community property, the survivor shall hold a (in) usufruct, during his or her natural life, so much of the share of the deceased in such community property as may be inherited by such issue. This usufruct shall cease, however, whenever the survivor shall enter into a second marriage." Article 916, Civil Code of Louisiana.

admitting that the Forstall decision is squarely against the proposition for which they contend, i.e., that the widow *did* acquire the usufruct of the children's share, say that in effect the Forstall case was overruled by the later case of Succession of Moore, 40 La.Ann. 531, 4 So. 460.

It is apt to observe that the facts of the case under consideration here, for all intents and purposes, are identical with those in the case of Forstall v. Forstall, cited supra. There, as in the case at bar, the deceased husband had disposed in favor of his surviving widow by last will and testament of his share of the community property; the heirs at law (more than three surviving children born of the union) contended they were entitled to have the legacy reduced to one-third and to receive the other two-thirds in full ownership, while the widow contended that she was entitled to the usufruct of the two-thirds reserved by law to the issue; and this Court held the surviving widow was not entitled to the usufruct, reasoning: "Article 916 must be construed with article 1493. Taken together, the meaning is: Where there has been no testamentary disposition of the disposable share of the predeceased husband or wife in the community property, the survivor shall be entitled to a usufruct during his or her natural life of so much of the share of the deceased in such community property as may be inherited by such issue. The condition upon which the survivor shall have a usufruct is, that the predeceased husband or wife shall not have disposed of his or her share, that is the share that he or she was permitted by law to dispose of. In the case at bar the disposable quantum was one-third of the property of the deceased, and the surviving widow has acquired this in full ownership by testamentary disposition. If the usufruct of the share of the deceased was more desirable than the full ownership of one-third thereof, the surviving widow could have renounced the legacy. As she prefers the rights acquired by the will to those accorded to her by law she has no cause to complain. *She can not hold both.*" (Emphasis ours.)

■ But this Court in the case of Succession of Moore, supra, refused to follow the rationale in the Forstall decision, and while stating that the rule there announced could not be invoked as a precedent because of the different facts of the Moore case (where, by will, the wife was given the usufruct of all the husband's property, and, by codicil thereto, was bequeathed the disposable portion), nevertheless embarked on an exhaustive reexamination and reconsideration of the pertinent articles of the Code as well as all the prior jurisprudence, and in a very carefully considered opinion gave an interpretation to those articles that had the effect of overruling the Forstall case, squarely holding "that a spouse in community can legally bequeath to the survivor

the disposable portion of his or her estate, as it always was known, and may confirm in his or her favor, the usufruct provided by law, either by remaining silent or by expressing himself clearly on the subject, the language used, whether a bequest or a ratification, being immaterial." In the course of the opinion the Court branded as "untenable" the proposition, affirmed in the Forstall case, that where there is a will which diverts from the issue the disposable part of the community property, so that the issue do not inherit the whole, the usufruct does not attach—observing that while a burden may not be placed on the share of the minors by will, the usufruct was created not by the will but by the law itself, i.e., Article 916 of the Civil Code.

██ We think that the decision in the Moore case shows a well reasoned, exhaustive study and analysis of the subject, and is basically sound. It is perfectly clear that Jacob Winsberg did not in any manner dispose by testamentary disposition adversely to the usufruct created by law in favor of his surviving wife; in fact, he intended that she should have even more than the law allows. The contention that the defendants, having been instrumental in obtaining the judgment placing the heirs in possession, are estopped from attacking the same except for error in fact and are concluded by said judgment, is without merit.[3] Such an estoppel will not be maintained in the absence of a showing that the person urging it has been misled to his prejudice,[4] and it is clear from the record that nothing was done by the mother pursuant to the judgment of possession that prejudiced Hermand's interest in the real estate. In fact, Hermand specifically recognized his mother's right to the usufruct by the recital in the instrument of February 1, 1946. We are therefore of the opinion that the District Court and the Court of Appeal were in error in their conclusion that plaintiff was entitled to be awarded an amount representing rent due Hermand for his interest in the realty from the time of Jacob Winsberg's death through 1945.

For the reasons assigned, the judgments of the District Court and of the Court of Appeal are annulled and set aside and the plaintiff's case is dismissed at her cost.

3. The authorities relied on by plaintiff in support of her contention, i. e., Smith v. Nelson, 121 La. 170, 46 So. 200; Nolan v. Succession of New, 31 La.Ann. 552; and Succession of Kranz, 162 La. 546, 110 So. 750, are inapposite and therefore are not controlling. See the authorities cited in footnote 4, post.

4. Sanderson v. Frost, 198 La. 295, 3 So. 2d 626; Janney v. Calmes, 212 La. 756, 33 So.2d 510; and Tyler v. Walt, 184 La. 659, 167 So. 182.