DIXON, Justice.
Writs were granted in this case to consider the effect of the remarriage of the surviving widow upon the usufruct of the surviving spouse.
B. J. Chauvin, Sr., was married once, and was survived by his widow and son. By last will and testament, olographic in form, he had provided: “I leave all I die possessed of to my son Bernard J. Chauvin, Jr.j subject to the usufruct thereon which I leave to my loving wife, Bernice.” The will did not mention that the usufruct was to be for life. All the property involved in the succession of B. J. Chauvin, Sr., was community property. There was a judgment of possession on April 8, 1969 recognizing the widow’s ownership in her one-half of the community, recognizing *831 Bernard J. Chauvin, Jr., as the only child and sole heir and the owner of the other undivided one-half of the community property “subject to the usufruct in favor of his mother, Mrs. Bernice Buwe, widow of B. J. Chauvin, Sr.”
On June 12, 1969 Mrs. Bernice Chauvin remarried. Her son subsequently sought to have her usufruct terminated because of the remarriage. Mrs. Chauvin filed an exception of no cause of action to her son’s rule; the district court maintained the exception and dismissed the rule.
On appeal, the ruling of the district court was reversed and the case was remanded in part and affirmed in part. The Court of Appeal, relying on Smith v. Nelson, 121 La. 170, 46 So. 200 (1908) and Succession of Carbajal, 154 La. 1060, 98 So. 666 (1924), held that the surviving spouse was allowed to retain the usufruct after her remarriage, saying:
“Thus our jurisprudence holds that a donation mortis causa of the usufruct of community property to the surviving spouse confers a lifetime usufruct which is not terminated by a subsequent marriage. This is true even if the testament grants the same usufruct the survivor would have acquired by operation of law under LSA-C.C. Art. 916 in an intestate succession.” (Succession of Chauvin, La. App, 242 So.2d 340, 342).
After reaching the conclusion that testamentary confirmation of a legal usufruct does not terminate on remarriage, the Court of Appeal went on to hold that C.C. art. 916 [1] is a statutory exception to the general rule of C.C. art. 1493,[2] which restricts the testator to all the provisions of C.C. art. 916 and requires termination of the usufruct over the legitime when the usufructuary remarries.[3]
Civil Code Article 540 provides the manner in which usufruct may be established:
“Usufruct may be established by all sorts of titles; by a deed of sale, by a marriage contract, by donation, compromise, *833 exchange, last will and even by operation of law.
“Thus the usufruct to which a father is entitled on the estate of his children during the marriage, is a legal usufruct.”
Both the relator and respondent before us take the position in their briefs that the usufruct created by Chauvin’s will was merely a confirmation of the legal usufruct created by C.C. art. 916. Although there is no statutory basis for the doctrine of confirmation of a legal usufruct, the idea is firmly embedded in our jurisprudence.
For convenience, the usufruct of the surviving spouse provided for in C.C. art. 916 is called the “legal usufruct.” (See also C.C. art. 560). Usufructs created by a will are, naturally, called testamentary usufructs.[4]
The relator relies on Winsberg v. Wins-berg, 233 La. 67, 96 So.2d 44 (1957),[5] which overruled Forstall v. Forstall, 28 La.Ann. 197 (1876) and reaffirmed Succession of Moore, 40 La.Ann. 531, 4 So. 460 (1888). Forstall held that where the decedent her queathed his share of the community to his widow, C.C. art. 916 did not apply, and the widow was not entitled to the usufruct over the legitime, because the deceased disposed by last will and testament of his share of the community property. In the Succession of Moore, supra, it was held that Article 916 applied to a testamentary disposition of “the disposable portion” of all the property to the surviving spouse, and the wife thus obtained the usufruct over the legitime, in addition to the disposable portion.
In Winsberg, the husband’s will left all his property (community) to his wife. The heirs were placed in possession of the legitime portion and the wife was placed in possession of the balance. There was no mention of usufruct in the judgment of possession. In a suit for an accounting by a grandchild, it was held that the terms of the will indicated an intention of the testator to leave his wife more than the law allowed, and that since there was no testamentary disposition adverse to the usufruct created by law, the widow would receive the disposable portion in addition to the usufruct over the legitime. The Winsberg case squarely decided that the legitime is subject to the usufruct of the surviving spouse when it is a legal usufruct confirmed by a testamentary disposition.
Relator argues that neither the legal usufruct confirmed by testament nor a purely testamentary usufruct terminates on re *835 marriage, relying on Smith v. Nelson, supra, and the Succession of Carbajal, supra. The respondent argues that the confirmation of the legal usufruct by testament subjects the legal usufruct to all the provisions of C.C. art. 916. In the alternative, the respondent argues that if we find the usufruct to be purely testamentary rather than the testamentary confirmation of a legal usufruct, then he is entitled to his legitime in full ownership.
In Smith v. Nelson, supra, the widow of Michael Smith married the defendant Nelson. She died testate in 1897, leaving three children by the first marriage. The will left to her children the property acquired during the first community, and to the surviving spouse, Nelson, the property acquired during the second community, with this further disposition: “Should my children claim the legitime, then I give and bequeath to my said husband the usufruct of all the property, movable and immovable, that was acquired during our marriage.”
The Smith children were sent into possession of the first community in full ownership and were sent into possession of the second community, subject to the usufruct in favor of Nelson. In 1906 the heirs and their issue sought a partition, alleging that their stepfather had remarried, and had thus “lost the usufruct by operation of law.”
The trial court dismissed the suit and the Supreme Court affirmed, noting that the trial court had held: “that as the usufruct enjoyed by Nelson was established by the will of his deceased wife, and by the judgment ordering its execution and putting him in possession, it is not affected by his remarriage.” The opinion then states: “Adhering to the conclusions stated, we deem it unnecessary to cite additional authority in their support.” 121 La. at 173-174, 46 So. at 200-201. The opinion then proceeds to discuss the problems involved in the demands for a partition between the naked owners and the usufructuary.
It is easy to understand how Smith v. Nelson is subject to misinterpretation. It has been cited to support the proposition that the part of C.C. art. 916 providing for the termination of the legal usufruct upon the remarriage of the usufructuary will not be enforced when the legal usufruct is confirmed by testament. Smith v. Nelson cannot stand for such a proposition. C.C. art. 916 is in no way involved, although it was listed in the authorities cited by the trial court. C.C. art. 916 is applicable “when the predeceased husband or wife shall have left issue of the marriage with the survivor . ” In Smith v. Nelson the predeceased wife left no children who were the issue of the marriage with the survivor. The widow’s children were the issue of the marriage with her first husband, who had predeceased her.
The only other Louisiana case located involving the termination of the usufruct *837 upon the remarriage of the surviving spouse is the Succession of Carbajal, supra. For two reasons the Carbajal case is inapplicable. (It was only in a per curiam on the application for rehearing that the Supreme Court considered the contention that the remarriage of the widow terminated the usufruct). First, the court referred to C.C. art. 1753 (repealed in 1918), which dealt with property inherited by the surviving spouse from the decedent, and gave the naked ownership, upon the second marriage of the surviving spouse, to the children of the first marriage, the remarrying spouse retaining only the usufruct of the property.[6] The court noted that the “right to the usufruct thereof remained, under the very terms of the Code . . . ”
Second, an examination of the record in the Carbajal case reveals that the testamentary disposition involved was: “I give and bequeath unto my said wife, Rosa Lopez Carbajal, the usufruct of all the remainder of my estate wherever situated, during the term of her natural life . ” (Emphasis added). Therefore, the Carbajal case involved a testamentary disposition of a usufruct which was clearly intended, by the terms of the testament, to exist for the life of the usufructuary, as well as the usufruct formerly provided for in C.C. art. 1753 before its repeal.
Therefore, the question before us is res nova. A Louisiana case has not been found which had to decide whether a testamentary disposition of the usufruct of the surviving spouse which merely confirmed the- legal usufruct granted by C.C. art. 916 terminated upon the remarriage of the surviving spouse.
Louisiana courts have frequently considered the effects of the classification of the usufruct of the surviving spouse as either legal or testamentary. The surviving spouse as a testamentary usufructuary owes taxes. Succession of Baker, 129 La. 74, 55 So. 714 (1911). The Succession of Brown, La.App., 94 So.2d 317 (1957), held that the usufruct of the community home left to the husband in a will was a confirmation of a legal usufruct and therefore not taxable. A. testamentary usufructuary must give security, in the absence of a testamentary provision dispensing with the security. Succession of Carlisi, 217 La. 675, 47 So.2d 42. (1950); C.C. art. 558. The legal usufructuary is not required to give bond. C.C. art. 560. One of the principal issues in the Succession of Moore, supra, was whether the legal usufruct, confirmed by testament, would attach to the legitime. The court held that it would, saying at 40 La. Ann. 542, 4 So. at 466:
“Next, Mrs. Moore will be entitled to the usufruct of the remaining share of the *839 deceased in the community during her widowhood, under the law, as confirmed by the will.
“Finally, the portion of the estate of the deceased as shall be thus subjected to the usufruct of Mrs. Moore shall be deemed as the legitime, accruing in naked ownership to the nine children, as forced heirs of the deceased, share alike,
The only reason suggested for departing from the practice of consistently treating the legal usufruct according to the terms of C.C. art'. 916 has been the contention that Smith v. Nelson and Succession of Carbajal stand as authority for the proposition that the legal usufruct confirmed by testament is not terminated by the marriage of the surviving spouse. The two cases do not support this conclusion. On the other hand, the language of the codal article (916) is clear and unequivocal: “This usufruct shall cease, however, whenever the survivor shall enter into a second marriage.” And the words “This usufruct” refer to the usufruct over “so much of the share of the deceased in such community property as may be inherited by such issue.”
In the case before us, the will bequeathed the naked ownership of all the community property (both the disposable and forced portions) to the issue of the marriage, Bernard J. Chauvin, Jr. This bequest constituted that portion of the community property “as may be inherited by such issue.” The second sentence of C.C. art. 916 became applicable. The usufruct ceased when the survivor, Bernice Buwe, remarried. Consequently, the Court of Appeal was in error when it concluded that the usufruct terminated only over the child’s forced portion when the wife remarried. Under the will confirmative of the dispositions of the statutory law, the usufruct terminated over all the community property which was bequeathed to the son. Mr. Chauvin, Sr. failed to indicate in his will that he intended to bequeath a life usufruct to his wife. If he had, we would be presented with different questions.
We therefore conclude that the mere confirmation, in a last will and testament, of the legal usufruct conferred by C.C. art. 916 does not free the usufruct from the limitations of that article, and it terminates “whenever the survivor shall enter into a second marriage.”
Both parties have applied to this court for writs to review the judgment of the Court of Appeal. The application of Bernard J. Chauvin, Jr., was denied, and that of Mrs. Bernice Buwe, widow of B, J. Chauvin, Sr., was granted.
The trial court sustained an exception of no cause of action and dismissed the rule filed by Bernard J. Chauvin, Jr., to terminate the usufruct. When Bernard J. Chauvin, Jr., appealed from this ruling, the *841 Ccmrt of Appeal affirmed in part, reversed in part and remanded. One question decided by the Court of Appeal is not before us: the court affirmed a judgment of the district court holding that a certain homestead savings account was the subject of an imperfect usufruct. The Court of Appeal then held that “a donation mortis causa of the usufruct of community property to the surviving spouse confers a lifetime usufruct which is not terminated by a subsequent marriage,” a holding with which we disagree. Further, the Court of Appeal held that the usufruct over the forced portion, inherited by the son, terminated by remarriage, because of the provisions of C.C. art. 916. (We do not reach this problem). The Court of Appeal remanded the case to the district court not for trial on the merits, but to determine whether the usufruct infringed on the legitime, and to what extent it might need be reduced. The demand of Bernard J. Chauvin, Jr., in his rule to terminate the usufruct did not require the introduction of evidence.
We now believe we erred in denying the application of Bernard J. Chauvin, Jr., for writs. His application should have been granted, as well as the other. Nevertheless, the rejection is final, and operates as a final determination of the issues presented in the application of Bernard J. Chauvin, Jr. The part of the judgment of the Court of Appeal unfavorable to him and favorable to the widow of B. J. Chauvin, Sr., will not be disturbed. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151. In spite of the fact that we differ with the Court of Appeal on the applicable law, and would have disposed of the case differently* we must affirm.
For these reasons, the judgment of the Court of Appeal is affirmed, at the cost of the relator.
SUMMERS, J, dissents.

. In all cases, when the predeceased husband or wife shall have left issue of the marriage with the survivor, and shall not have disposed by last will and testament, of his or her share in the community property, the survivor shall hold a [in] usufruct, during his or her natural life, so much of the share of the deceased in such community propei’ty as may be inherited by such issue. This usufruct shall cease, however, whenever the survivor shall enter into a second marriage.”

. “Donations inter vivos or mortis causa can not exceed two-thirds of the property of the disposer, if he leaves, at his decease, a legitimate child; one-half, if he leaves two children; and one-third, if he leaves three or a greater number.
“Under the name of children are included descendants of whatever degree they be, it being understood that they are only counted for the child they represent.”

.It was to determine “whether the usufruct in fact infringes on the legitime or the extent of the infringement if the same does exist” that the Court of Appeal remanded the case to the district court. 242 So.2d 340, 344.

. For a review of the law respecting testamentary dispositions to the surviving spouse, see Xiannopoulos, Testamentary Dispositions in Favor of the Surviving Spouse and the Legitime of Descendants, 28 La.L.Rev. 509 (1968).

. Oppenheim, One Hundred Fifty Years of Succession Law, 33 Tul.L.Rev. 43, 46 (1958); Yiannopoulos, Personal Servitudes, § 104 (1968); Note, 18 La.L.Rev. 574 (1958).

. The testator died’ in 1901; the surviving widow remarried before the passage of Act 238 of 1918, which repealed C.C. art. 1753.