323 So.2d 434 (1975)
Succession of Gilbert Spence WALDRON.
No. 56156.
Supreme Court of Louisiana.
November 3, 1975.
*435 Fred H. Belcher, Jr., McCollister, Belcher, McCleary & Fazio, Baton Rouge, for Katherine L. Waldron.
Alton T. Moran, Baton Rouge, for Thelma Denn Waldron.
MARCUS, Justice.
Gilbert Spence Waldron died testate on February 23, 1973, survived by his widow, Mrs. Katherine L. Waldron, and their only child, Mrs. Thelma Waldron Denn. The decedent's estate consisted solely of community property. The dispositive portion of his olographic will, valid in form, provided as follows:
Second, I will and bequeath unto my wife, Katherine L. Waldron, the usufruct of my entire estate for life, in addition to the naked title to all other property that I own at my death, subject to and less that portion that under the law my daughter Thelma is entitled to inherit as her legitime or forced portion.
......
In case my wife predeceases me, in that event, I will and bequeath unto my grandchild Phillip Anthony Parrino, Jr. Five Hundred (500.00) Dollars, Cash, and unto my daughter, Thelma Alice Parrino, only that portion of my estate that under the law she is entitled to inherit as a forced portion, it being my intention to limit her inheritance to only her legitime. The balance of my estate, in case my wife predeceases me, I will and bequeath unto my grandchildren, George Frederick Denn and Thomas James Denn, in equal proportion, share and share alike.
After the will was probated, the testator's daughter filed suit to reduce the usufruct in favor of her mother, alleging that it impinged upon the forced portion. The trial court rendered judgment in favor of defendant, and the court of appeal reversed. 308 So.2d 364 (La.App. 1st Cir. 1975). *436 Upon defendant's application, we granted certiorari. 313 So.2d 245 (La.1975).
In the portion of the will set forth above, the testator bequeathed to defendant the usufruct of his entire estate for life, as well as the naked ownership of the disposable portion, which was two-thirds of the estate. La.Civil Code art. 1493 (1870). He left to plaintiff, his only child, the naked ownership of the forced portion. These dispositions, in addition to his twice-repeated desire that his daughter's inheritance be restricted to her legitime, make quite evident his intention to leave to his wife the maximum amount allowed under Louisiana law.
Our law generally mandates that the forced heir inherit the legitime in full ownership. La.Civil Code arts. 1493, 1494,[1] 1710[2] (1870). To this general rule there is an exception in article 916 of the Civil Code, which, prior to its amendment in 1975,[3] provided as follows:
In all cases, when the predeceased husband or wife shall have left issue of the marriage with the survivor, and shall not have disposed by last will and testament, of his or her share in the community property, the survivor shall hold a [in] usufruct, during his or her natural life, so much of the share of the deceased in such community property as may be inherited by such issue. This usufruct shall cease, however, whenever the survivor shall enter into a second marriage.
We have held that the legal[4] usufruct authorized by article 916 does not apply only in intestate successions. The testator may confirm in his will the usufruct that the surviving spouse inherits by operation of law under article 916. Succession of Chauvin, 26 La. 828, 257 So.2d 422 *437 (1972). Additionally, he may donate Mortis causa the disposable portion of his estate to her in full ownership. Succession of Moore, 40 La.Ann. 531, 4 So. 460 (1888). In practical effect, the surviving spouse is permitted to cumulate the legal usufruct in her favor with donations mortis causa that do not exceed the disposable portion. The testator is not permitted, however, to burden the legitime with a usufruct beyond the period authorized by Civil Code article 916. La.Civil Code art. 1710 (1870); Chauvin, supra.[5] Hence, the legal usufruct, even when confirmed in the testament, terminates by operation of law upon the surviving spouse's remarriage.[6]
In the case sub judice, defendant has not remarried, plaintiff was issue of her marriage with the decedent, and the decedent's entire estate consists solely of community property. Clearly, then, if Mr. Waldron had died intestate a legal usufruct in defendant's favor would have attached to his entire estate. Or, if he had left the disposable portion in full ownership to his widow and had merely confirmed the article 916 usufruct, a legal usufruct would have attached to the forced portion. The testator, however, did not merely confirm the legal usufruct, which, as stated above, ends upon remarriage; he provided that the usufruct should last for life. The question for determination is whether the testator, in attempting to give defendant greater rights than the law permits, has deprived her of the legal usufruct.
The court of appeal held that he did. The court stated that a usufruct that "departs from the provision of Article 916" must be characterized as wholly testamentary, rather than legal, and thus must be reduced to the extent that it impinges on the forced portion. It therefore held that plaintiff was presently entitled to the forced portion in full ownership.
We disagree. In Succession of Moore, 40 La.Ann. 531, 4 So. 460 (1888), this court, rejecting prior cases to the contrary,[7] held that the surviving spouse is entitled to the article 916 usufruct unless a testamentary disposition is adverse to the legal usufruct. The testator can exclude the operation of article 916 if he exhausts, by means of donations mortis causa to persons other than his spouse, the portion of his estate that under article 916 is subject to the legal usufruct.[8] He may also defeat the legal usufruct simply by stating his intention that his share of the community property inherited by issue of the marriage shall not be subject to it. Absent such an adverse testamentary disposition, the surviving spouse inherits, by operation of law, a usufruct of the estate to the extent permitted by Civil Code article 916.
Accordingly, our task is to examine the testament in this case in order to determine whether the decedent disposed of his estate adversely to the legal usufruct. He provided that his widow should enjoy a usufruct of the forced portion of his estate for life. As we stated in Winsberg v. Winsberg, 233 La. 67, 96 So.2d 44 (1957), a bequest to one's spouse of more than the law allows is not an adverse disposition *438 that defeats the legal usufruct.[9] Since the disposition sub judice is obviously not adverse, the legal usufruct is not defeated.
We reaffirm Moore and Winsberg, believing that these decisions are consonant with the Civil Code. Article 1712 of the Civil Code[10] directs us to interpret a testament in a way that furthers, rather than frustrates, the testator's lawful intent. In addition, article 1502 provides that excessive donations are not null, but merely reducible to the disposable portion.[11] The court of appeal reached a result that was contrary to the mandate of article 1712 and to the spirit of article 1502.[12] For, if the testator in this case had left his widow the disposable portion in full ownership, and had either been silent as to the devolution of the legitime[13] or had provided that the forced portion was only "subject to"[14] a usufruct, the surviving spouse could have inherited both the disposable portion in full ownership and a usufruct of the legitime until her remarriage. The result reached by the court below makes the testator's widow, who has not remarried, the victim of his liberality. Furthermore, it frustrates the intention of the testator, who sought to leave his wife the maximum amount that was legally permissible.
It must be remembered that the surviving spouse's usufruct of the legitime is created by virtue of the law, not by the will. Moore, supra.[15] Hence, the usufruct is legal, and does not impinge on the legitime, to the extent that it gives the surviving spouse the same rights that she inherits by operation of law under article 916. Only to the extent that, and at such time as, allowance of the usufruct would give the surviving spouse greater rights than those she inherits by operation of law must it be considered testamentary, and must it be examined to determine whether it impinges on the legitime.
This result is totally consistent with Moore itself, the seminal case in this area. Indeed, the facts in Moore, are indistinguishable from those in the present case. In Moore, the testator bequeathed his *439 wife the disposable portion in full ownership, and further provided that she should have a usufruct of the forced portion "during her natural life." We held that the forced portion would be subject to a usufruct during her widowhood. Implicit in this holding was a recognition by this court that the usufruct would not be regarded as testamentary ab initio, but only upon such time as the spouse should remarry.
Finally, we should consider whether article 1499 of the Civil Code, which we applied recently in Succession of Hyde, 292 So.2d 693 (La. 1974), affords plaintiff a remedy. Article 1499 provides:
If the disposition made by donation inter vivos or mortis causa be of a usufruct, or of an annuity, the value of which exceeds the disposable portion, the forced heirs have the option either to execute the disposition or to abandon to the donee the ownership of such portion of the estate as the donor had a right to dispose of.
The option of article 1499 is offered, however, only when a usufruct impermissibly burdens the legitime. Hyde, supra, 292 So.2d at 696-97, nn. 3 & 4. In this case, the usufruct is authorized until remarriage by article 916 and thus does not burden the legitime contrary to law. Article 1499 is also inapplicable because the disposable portion has been left to defendant in full ownership. In order for the forced heir to recover the legitime in full ownership, article 1499 requires that he abandon to the donee the disposable portion in full ownership, i.e., that he surrender the naked ownership of the disposable portion to the usufructuary. Because the forced heir (plaintiff) cannot abandon that which she does not own, it is impossible for her to exercise the option. As we stated in Hyde:
Of all the charges and conditions a testator could devise to place on the legitime, only the usufruct is sanctioned. And then it is sanctioned at the option of the forced heir, for he can always take his legitime free of the usufruct by abandoning to the donee the disposable portion in full ownership. Such is the price which must be paid for frustration of the testator's will in this regard.
292 So.2d at 697 (emphasis added).[16]
Article 1499 cannot be employed when the preconditions for its exercise are not met; as French doctrinal writers state, it is an exceptional provision and must be restrictively applied. See, e.g., 3 C. Aubry et C. Rau, Cours de droit civil francais § 684a, at 220 (La.State L.Inst. transl. 1969); 5 M. Planiol et G. Ripert, Traite pratique de droit civil francais, no. 131, at 170 (2.ed. 1957).
We hold, therefore, that defendant is entitled to inherit, in addition to the disposable portion in full ownership, a usufruct of the forced portion until remarriage. If she remarries, article 916 will cease to have application, and the usufruct of the forced portion will be extinguished by operation of law. Defendant thus receives no more than the testator could lawfully have bequeathed her, and no less.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed, and the judgment of the trial court is reinstated; all costs of this proceeding are to be assessed against plaintiff.
*440 DIXON, J., dissents and assigns reasons.
DIXON, Justice (dissenting).
I respectfully dissent.
It seems to me that the court does little today except perpetuate the confusion that naturally follows the "adverse disposition" doctrinea doctrine which effectively erases one of the important conditions precedent to the operation of C.C. 916: "... when the predeceased ... shall not have disposed by last will and testament, of his or her share in the community property ..." 25 La.L.Rev. 873, 877ff.; 18 Tul.L.Rev. 181, 199ff.; Yiannopoulos, Personal Servitudes, §§ 103, 104 (West, 1968).
We also continue to approve an erosion of one provision of C.C. 1710: "... no charges or conditions can be imposed by the testator on the legitimate portion of forced heirs ..." See also C.C. 1493-1495.
True, C.C. 916 is a "charge" upon the legitime, necessarily recognized because it is imposed by the same kind of statute that protects the legitime. But its history indicates its application should not be extended beyond its terms.
C.C. 916 appeared in the Code for the first time in 1870. Its source was Act 152, & sect; 2 of 1844. There was no corresponding article in the Code Napoleon, perhaps the result of a drafting mistake (see Planiol, The Civil Law, Vol. 3Part 1, § 1868, La. State Law Institute, 1959), a mistake perpetuated in part because of a continental preference for devolution to blood kin, rather than to those presumed closest in affection to the decedent. Reform in France establishing a widow's usufruct came much later than in Louisiana. (Planiol, supra, § 1869ff.).
Our Civil Code has contained a prohibition against "charges" upon the legitime since 1808. Article 1703 of the 1825 Code (art. 1710, Civil Code of 1870) was held to prohibit the bequest to the surviving spouse of a life usufruct on the entire estate. Clarkson v. Clarkson, 13 La.Ann. 422 (1858). In Succession of Turnell, 32 La. Ann. 1218 (1880), C.C. 1710 was held to prevent a testamentary requirement that the property be administered for five years and held under administration until each minor heir reached majority. Until Act 152 of 1844, not even the widow's usufruct would burden the legitime; the widow was protected, as in France, by her right to one-half of the community, the needy spouse's marital fourth, and the privileged claim to $1000 from an insolvent estate. (Dainow, Forced Heirship, 4 La.L.Rev. 42, 63).
Although the Succession of Chauvin, 260 La. 828, 257 So.2d 422 (1972), involved the "confirmation" doctrine, it should not be interpreted as favoring the perpetuation of the "adverse disposition" notiona doctrine which seems to produce result-oriented decisions rather than decisions predictably based upon clear statutory provisions.
The Succession of Chauvin, supra, held that, when a will left "all I die possessed of to my son ... subject to the usufruct thereon which I leave to my loving wife. ...," there was a "confirmation" of the C.C. 916 widow's usufruct which terminated upon remarriage, according to the provisions of C.C. 916. The only reason (that can be gleaned from the Chauvin opinion) for deciding that C.C. 916 required that remarriage ended the widow's usufruct is that the will purported to make no disposition of property that would not have been made in the absence of a will by operation of law. Although we had the opportunity to abandon the "confirmation" concept, we declined and chose instead to follow the "deeply imbedded" jurisprudential doctrine of "confirmation." Yiannopoulos, Property, 32 La.L. Rev. 172, 197. If the will in Chauvin had done other than "confirm", we could not have enforced the last sentence of C.C. 916, because, by its terms, if the forced *441 heir had not inherited the disposable portion, C.C. 916 would not have been applicable.
We now have in our jurisprudence enough cases to evaluate the judicial gloss on C.C. 916, and it seems to me that it is time to return to the codal provision, and hold that, if the testator disposed (to anyone) of his share in the community, C.C. 916 should not apply, and there should be no legal usufruct over the portion of the community inherited by the children. We should overrule the Succession of Moore, 40 La.Ann. 531, 4 So. 460 (1888) and Winsberg v. Winsberg, 233 La. 67, 96 So. 2d 44 (1957), and reinstate the rule of Forstall v. Forstall, 28 La.Ann. 197 (1876).
If the legitime, then, is thought by the forced heirs to be burdened by a testamentary usufruct, C.C. 1499, is available, the heirs are protected in their right to an unfettered legitime, and the erstwhile usufructuary is compensated by becoming the owner of the disposable portion.
NOTES
[1] La.Civil Code art. 1493 (1870) provides:

Donations inter vivos or mortis causa can not exceed two-thirds of the property of the disposer, if he leaves, at his decease, a legitimate child; one-half, if he leaves two children; and one-third, if he leaves three or a greater number.
Under the name of children are included descendants of whatever degree they be, it being understood that they are only counted for the child they represent.
La.Civil Code art. 1494 (1870), as amended, La.Acts 1956, No. 313, provides:
Donations inter vivos or mortis causa can not exceed two-thirds of the property, if the disposer, having no children, leaves a father, mother, or both, provided that where the legal portion of the surviving father, mother, or both is less than one-third the forced portion shall not be increased to one-third but shall remain at the legal portion.
These articles place an absolute limit on freedom of testation. The legitime therefore passes to the forced heir ab intestato, and in full ownership. Succession of Hyde, 292 So. 2d 693 (La.1974); Succession of Turnell, 32 La.Ann. 1218 (1880); Clarkson v. Clarkson, 13 La.Ann. 422 (1858); C. Aubry et C. Rau, Cours de droit civil francais § 679, at 193 (La.State L.Inst. transl. 1969).
[2] La.Civil Code art. 1710 provides that no charges or conditions may be placed by the testator on the forced portion. See 2 J. Domat, The Civil Law in its Natural Order, no. 3213, at 373 (L. Cushing ed. W. Strahan transl. 1850), where a "charge" is defined as a usufruct; Comment, The Forced Heir as Naked Owner: An Exegesis, 48 Tul.L. Rev. 1209, 1232 (1974).
[3] La.Acts 1975, No. 680, § 1, amending La. Civil Code art. 916 (1870), states:

In all cases, when the predeceased husband or wife shall have left issue of the marriage with the survivor, and shall not have disposed by last will and testament, of his or her share in the community property, the survivor shall hold in usufruct, during his or her natural life, so much of the share of the deceased in such community property as may be inherited by such issue. This usufruct shall cease, however, whenever the survivor shall enter into a second marriage unless the usufruct has been confirmed for life or any other designated period to the survivor by the last will and testament of the predeceased husband or wife, and the rights of forced heirs to the legitime shall be subject to any such usufruct, which usufruct shall not be an impingement upon the legitime.
[4] A legal usufruct is one that is created by operation of law. La.Civil Code art. 540 (1870). The usufruct established by Civil Code article 916 is a legal usufruct. Succession of Costa, 19 La.Ann. 14 (1867). A usufruct that owes its existence to the will is testamentary.
[5] In Chauvin, the testator provided that his estate was "subject to" a usufruct. We held that this language merely confirmed the article 916 usufruct. In Chauvin, unlike the instant case, the surviving spouse remarried, and the legal usufruct thereby terminated.
[6] Article 916, as amended in 1975, now permits the testator to create a testamentary usufruct that may last beyond remarriage without impinging upon the legitime.
[7] Cases before Moore had held that any testamentary disposition excluded the legal usufruct. E.g., Forstall v. Forstall, 28 La.Ann. 197 (1876). Although Moore had sought to distinguish this case, we recognized in Winsberg v. Winsberg, 233 La. 67, 96 So.2d 44 (1957), that Moore had overruled it.
[8] See Yiannopoulos, Testamentary Dispositions in Favor of the Surviving Spouse and the Legitime of Descendants, 28 La.L.Rev. 509, 516 (1968).
[9] In Winsberg, the testator left to his widow his entire estate in full ownership. His children reduced the disposition to the disposable portion, one-third of the estate. This court, dismissing a suit for an accounting brought years later against the widow, held that the remainder of the estate was also subject to a usufruct in her favor.
[10] La.Civil Code art. 1712 (1870) provides:

In the interpretation of acts of last will, the intention of the testator must principally be endeavored to be ascertained, without departing, however, from the proper signification of the terms of the testament.
See also id. art. 1713:
A disposition must be understood in the sense in which it can have effect, rather than that in which it can have none.
[11] We hesitate to say that the usufruct in this case is actually being "reduced." Reduction implies a decrease in value, see La.Civil Code arts. 1502 et seq. (1870), whereas no value can be placed upon a mere right of remarriage. Succession of Lynch, 145 So. 42 (La. App.Orl.1932).
[12] The only case cited by the court of appeal in support of its holding was Succession of Young, 205 So.2d 791 (La.App.1st Cir. 1968). This case is inapposite. In Young the testator left his estate in usufruct to his second wife. The child of a former marriage sued for a reduction. Article 916 of the Civil Code did not authorize the impingement in Young, whereas here the usufruct does not impinge on the legitime since it is authorized by article 916.
[13] Where the decedent dies only partially testate, the legal usufruct attaches to the undisposed share of the community estate as may be inherited by the issue of the marriage. Succession of Glancy, 108 La. 414, 32 So. 356 (1902).
[14] Chauvin, supra.
[15] This court stated in Moore:

It is true that Moore could not incumber the portion for which his children are forced heirs, that is, their legitime, but the fact is that he has not done so, for the incumbrance is placed upon it by law, independent of his participation. (Emphasis added). 40 La.Ann. 531, 537, 4 So. 460, 463 (1888).
[16] Where the testator has bequeathed full ownership of the disposable portion and a usufruct of the forced portion that is not authorized by article 916, the remedy of the forced heir would be an action of simple reduction of the usufruct under La.Civil Code arts. 1502 et seq. (1870), rather than the special action of reduction-with-compensation envisioned by article 1499. See 41 Tul.L.Rev. 210 (1966).