680 So.2d 1381 (1996)
Charles Michael MORGAN, et al.,
v.
Atherton L. LEACH, Individually, and as Executor of the Succession of Ramona Annette McGowan Leach.
No. 96 CA 0173.
Court of Appeal of Louisiana, First Circuit.
September 27, 1996.
*1382 Kimberly F. Lieder, Slidell, for Defendants-Appellants.
Celeste Tanner, Hammond, for Plaintiffs-Appellees.
Before WATKINS, KUHN, and GUIDRY,[1] JJ.
WATKINS, Judge.
Ramona Annette McCowan Leach died testate on October 24, 1994, survived by her husband, Mr. Atherton L. Leach, and her two children from a previous marriage. At the time of her death, Mrs. Leach's children were each competent and over the age of 23 years. In her last will and testament dated February 26, 1993, Mrs. Leach bequeathed to her husband, Mr. Atherton Leach, the entirety of her estate in full ownership; Mr. Leach was also named as testamentary executor. On April 17, 1995, the decedent's children, Charles Michael Morgan and Mitchell Keith Morgan, filed a petition to annul the probated testament asserting several grounds for annulment.
Mrs. Leach wrote her testament after the passage of Act 788 of 1989 and Act 147 of 1990, which essentially abolished forced heirship for all children who were competent and over the age of 23 years. However, she failed to change her will after the legislation was declared unconstitutional by the Louisiana Supreme Court in Succession of Lauga, 624 So.2d 1156 (La.1993). Mrs. Leach died before the recent constitutional amendments and legislative acts abolishing forced heirship.
In accordance with Succession of Lauga, 624 So.2d 1156, and Succession of Terry, 624 So.2d 1201 (La.1993), the trial court applied the law in effect prior to the unconstitutional statutory revisions and recognized the decedent's two children as forced heirs. The court awarded them full ownership of one-half of the decedent's estate for the following reasons:
La.C.C. Art. 1502 provides "Any disposal of property, whether inter vivos or mortis causa, exceeding the quantum of which a person may legally dispose to the prejudice of the forced heirs, is not null, but only reducible to that quantum." In line with Art. 1502 and the jurisprudence, this court determines the plaintiffs are entitled to be recognized as the forced heirs of the decedent, Ramona Annette McGowan Leach and as such, are entitled to an undivided half interest in her estate. The remainder is to go in indivision to her husband Atherton Lloyd Leach.
Regarding plaintiff's allegation that a will containing a "living will" provision is invalid because the intent of the testator is to take effect while the testator is still alive, thus being outside the provisions of La.C.C. Art. 1469, is without merit. La. C.C. art. 1469 defines a donation mortis causa as an act to "dispose of property." The "living will" provision is not a donation of property.
Plaintiffs argue they are entitled to take their forced portion in full ownership without a usufruct in favor of the surviving spouse since decedent's spouse was her second husband and not the father of the forced heirs. Plaintiff's (sic) cite Succession of Suggs, 612 So.2d 297 (La.App. 5th Cir.1992) which interpreted La.C.C. Arts. 890 and 1752 to deny the usufruct to the second spouse of the deceased when there are forced heirs from a prior marriage. This court is in agreement with the fifth circuit and therefore finds that plaintiffs are entitled to their undivided half interest in Mrs. Leach's estate in full ownership.
Mr. Leach appealed the trial court judgment alleging the court erred in finding that he was not entitled to a life usufruct over the forced portion of the decedent's estate without the necessity of posting bond. Mr. Leach concedes that the plaintiffs are the forced heirs of the decedent; however, he contends the court erred in failing to recognize *1383 his entitlement to a life usufruct over the forced portion.
Initially, we note that the decision in Succession of Suggs, 612 So.2d 297 (La.App. 5th Cir.1992), joint motion to withdraw writ application granted and request to vacate judgments of lower courts denied, 620 So.2d 860 (La.1993), as it relates to the instant case, was overruled in Succession of Gilbert,[2] 95-426 (La.App. 5th Cir. 1/30/96), 668 So.2d 1212. The court in Gilbert rejected the reasoning in Suggs and established the validity of a testamentary usufruct in favor of the surviving spouse over the legitime of forced heirs who were not issue of the marriage. The court concluded that LSA-C.C. art. 1752 does not limit the express authority granted by LSA-C.C. art. 890, stating that:
[A]rt. 1752 is a general permissive provision that, upon last amendment, was intended to allow a spouse to give that part of his disposable estate to his surviving spouse that he could give to a stranger. It removed any pre-existing restrictions on interspousal donations. La.C.C. art. 890, on the other hand, specifically applies to usufructs over the forced portion of the deceased's estate and expressly authorizes the granting of a usufruct in favor of the surviving spouse upon the legitime of forced heirs not issue of the marriage. [Emphasis in original.]
Id. at 1221.
We believe the reasoning expressed in Succession of Gilbert is the correct interpretation of Articles 890 and 1752. Accordingly, the fact that the decedent has children from a previous marriage does not bar a usufruct to her surviving spouse over the children's forced portion. We must now determine whether the bequest by Mrs. Leach of "the entirety of her estate in full ownership" to her spouse conferred a usufruct to him and, if so, the extent of that usufruct.
At the time of Mrs. Leach's death, LSA-C.C. art. 890 provided as follows:
If the deceased spouse is survived by descendants and shall not have disposed by testament of his share in the community property, the surviving spouse shall have a legal usufruct over so much of that share as may be inherited by the descendants. This usufruct terminates when the surviving spouse contracts another marriage, unless confirmed by testament for life or for a shorter period.
The deceased may by testament grant a usufruct for life or for a shorter period to the surviving spouse over all or part of his separate property.
A usufruct authorized by this Article is to be treated as a legal usufruct and is not an impingement upon legitime.
If the usufruct authorized by this Article affects the rights of heirs other than children of the marriage between the deceased and the surviving spouse or affects separate property, security may be requested by the naked owner.
The usufruct established by LSA-C.C. art. 890 is recognized by our courts as a legal usufruct, and unless there is an adverse testamentary disposition, the surviving spouse inherits, by operation of law, a usufruct of the estate to the extent permitted by Article 890. See Succession of Waldron, 323 So.2d 434, 437 (La.1975). Because a bequest to a spouse of more than the law allows is not an adverse disposition, it is treated as a confirmation of a legal usufruct. Winsberg v. Winsberg, 233 La. 67, 96 So.2d 44, 48 (1957). Having found that Mr. Leach is entitled to a legal usufruct, we must now determine the extent of the usufruct to which he is entitled.
According to LSA-C.C. art. 1502, any disposal of property mortis causa exceeding the quantum a person may legally dispose of to the prejudice of the forced heirs need only be reduced to that quantum. Furthermore, the provisions of LSA-C.C. art. 890 provide that the testator may leave the surviving spouse the usufruct for life of all his property, both separate and community, even if the naked owners are not issue of the marriage with the surviving spouse. The article further states that any usufruct it *1384 authorizes is to be treated as a legal usufruct and is not an impingement on the legitime. With these principles in mind, we must next determine what the testatrix intended by her bequest of "the entirety of my estate in full ownership." In making this determination we are guided by the following rules for interpreting wills found in the Louisiana Civil Code:
LSA-C.C. art. 1712 provides:
In the interpretation of acts of last will, the intention of the testator must principally be endeavored to be ascertained, without departing, however, from the proper signification of the terms of the testament.
LSA-C.C. art. 1713 provides:
A disposition must be understood in the sense in which it can have effect, rather than that in which it can have none.
LSA-C.C. art. 1715 provides:
When, from the terms made use of by the testator, his intention can not be ascertained, recourse must be had to all circumstances which may aid in the discovery of his intention.
The above cited code articles direct us to interpret a testament in a way that furthers, rather than frustrates, the testator's lawful intent. Waldron, 323 So.2d at 438. See also Succession of Mydland, 94-0501 (La.App. 1st Cir. 3/3/95), 653 So.2d 8, 11-12. With this in mind we find that Mrs. Leach intended that her husband be given the maximum permitted under the law. According to the law in effect prior to the effective date of Act 788 of 1989 and Act 147 of 1990, the maximum Mrs. Leach could give to her husband without impinging upon her children's legitime was a life usufruct over community and separate property. LSA-C.C. art. 890. Because LSA-C.C. art. 1502 only requires a reduction to the point where the bequest no longer impinges upon the legitime, we can best effectuate Mrs. Leach's intention by holding that Mr. Leach is entitled to a life usufruct over the forced portion.
The duration of a legal usufruct, confirmed by testament, was addressed by the Louisiana Supreme Court in Succession of Chauvin, 260 La. 828, 257 So.2d 422, 426 (1972), and Succession of Waldron, 323 So.2d 434.
In Chauvin, the testator left his entire estate to his only son subject to a usufruct in favor of his wife. The will did not designate that the usufruct was for life. The estate consisted solely of the testator's one-half interest in the community of acquets. When Mrs. Chauvin remarried, her son sought to have the usufruct terminated by application of Article 916. The Louisiana Supreme Court held that the disposition in favor of the surviving spouse merely confirmed the operation of Article 916, and that the usufruct was legal and thus terminated upon remarriage.
Chauvin was confirmed in Succession of Waldron, wherein the testator left his wife "the usufruct of my entire estate for life, in addition to the naked title to all other property that I own at my death, subject to and less that portion that under the law my daughter Thelma is entitled to inherit as her legitime or forced portion." Id. at 435. The daughter sought to reduce the usufruct, alleging that it impinged upon her forced portion. The court held that the testamentary disposition did not defeat the legal usufruct; however, because the testator was not permitted to burden the legitime with a usufruct beyond the period authorized by Civil Code Article 916, the legal usufruct terminated upon remarriage.
It is important to note that at the time of the Chauvin and Waldron decisions, Civil Code Article 916, the predecessor of Article 890, provided as follows:
In all cases, when the predeceased husband or wife shall have left issue of the marriage with the survivor, and shall not have disposed by last will and testament, of his or her share in the community property, the survivor shall hold a (in) usufruct, during his or her natural life, so much of the share of the deceased in such community property as may be inherited by such issue. This usufruct shall cease, however, whenever the survivor shall enter into a second marriage.
It was not until 1975 that Article 916 was amended to provide for the confirmation by testament of a life usufruct over the *1385 forced portion.[3] Notwithstanding this change in the law, we believe that the reasoning expressed in Waldron supports the result reached herein. The Waldron court, aware of the impending change in the law,[4] concluded that "[a]bsent ... an adverse testamentary disposition, the surviving spouse inherits, by operation of law, a usufruct of the estate to the extent permitted by Civil Code article 916." Waldron, 323 So.2d at 437. We believe that this language applies with equal force to the facts of this case. Furthermore, we do not believe that the absence of a specific duration of the usufruct prohibits a testamentary confirmation of a life usufruct where it is clear that the testator intended to give the maximum permitted under the law.[5] Compare Succession of Vallette, 538 So.2d 707 (La.App. 4th Cir.) writ denied, 543 So.2d 20 (La.1989), and Darby v. Rozas, 580 So.2d 984 (La.App. 3d Cir.), writ granted, 585 So.2d 554 (La.1991) (dismissed on joint motion of the parties).
Accordingly, we believe that the result reached herein is in accord with the Chauvin and Waldron decisions in light of the legislative changes and the particular facts of this case.
Finally, we address the issue of security requested by the forced heirs. LSA-C.C. art. 890 provides that "[i]f the usufruct authorized by this Article affects the rights of heirs other than children of the marriage between the deceased and the surviving spouse or affects separate property, security may be requested by the naked owner." See also LSA-C.C.P. art. 3154.1. The plaintiffs herein, being children of a previous marriage, are clearly entitled to security, and we will remand the case to the trial court for a determination of the appropriate security required.
Accordingly, we amend that portion of the trial court judgment awarding plaintiffs their forced portion in full ownership to award them the naked ownership of their forced portion. We amend the judgment to award the defendant, Mr. Leach, in addition to the disposable portion in full ownership, a usufruct of the forced portion for life. We remand this matter to the trial court for further proceedings in accordance with the opinions set forth herein.
AMENDED IN PART, AND AS AMENDED AFFIRMED; REMANDED FOR FURTHER PROCEEDINGS.
NOTES
[1] Judge Carl A. Guidry, retired, is serving as judge pro tempore, by special appointment of the Louisiana Supreme Court.
[2] The reasoning in Suggs was also rejected in Succession of Becker, 94-1491 (La.App. 4th Cir. 6/1/95), 660 So.2d 61, writ denied, 95-2411 (La. 12/15/95), 664 So.2d 455. See also revision comments to LSA-C.C. art. 1499 as enacted by Act 77 § 1 of 1996.
[3] The differences between former Article 916 and the present version of Article 890 were set forth in Succession of Steen, 508 So.2d 1377, 1379 (La. 1987) as follows:

First, the [Article 890] usufruct extends to all descendants and not just `issue of the marriage'. Second, by testament, a spouse can extend the legal usufruct for life. Third, by testament, a spouse may grant a usufruct over all or part of his separate property. Fourth, any usufruct granted by a testator to a spouse is to be treated as a legal usufruct. Last, if the legal usufruct affects heirs who are not children of the marriage, the naked owners may request security.
[4] See Waldron, 323 So.2d at 437, n. 6.
[5] We note recent legislative changes in Act 1996 No. 77 § 1 wherein Article 1499 states that a usufruct granted by the decedent to a surviving spouse "shall be for life unless expressly designated for a shorter period."