580 So.2d 984 (1991)
Mary Ann Rozas DARBY, et al., Plaintiffs-Appellants,
v.
Dorothy Prejean ROZAS, Defendant-Appellee.
No. 89-964.
Court of Appeal of Louisiana, Third Circuit.
May 22, 1991.
*985 Bruce A. Gaudin, Opelousas, for plaintiffs-appellants.
Andrus & Doherty, James P. Doherty, Opelousas, for defendant-appellee.
Before DOMENGEAUX, FORET, LABORDE, KNOLL and KING, JJ.
LABORDE, Judge.
Dr. Sidney J. Rozas died testate on April 6, 1986. In his last will and testament dated August 13, 1982, Dr. Rozas made the following bequests:
* * * * * *
"I give and bequeath to my beloved wife, Dorothy Prejean Rozas, our home property located at 1115 Dietlein Boulevard, Opelousas, Louisiana, together with the vacant lot located to the south of such residence, including all furnishings, furniture and contents.
I also will and bequeath to my wife, Dorothy Prejean Rozas, the personal automobile which she may be using at the time of my death.
Subject to the above, I will and bequeath to my wife, Dorothy Prejean Rozas, the usufruct of all properties owned by me, movable and immovable, separate and community, including the usufruct of all royalties and minerals.
Subject to the above, I further will and bequeath to my wife, Dorothy Prejean Rozas, such additional bonds, stock and cash in order that she would receive, including the above bequest, one-half of the net value of my estate.
Subject to the foregoing and to the payment of all debts and claims, including estate taxes, I bequeath all of the remainder of my properties, movable and immovable, that I may own at my death to my two daughters, Alice Augusta Rozas Bienvenu and Mary Ann Rozas Nicholson, share and share alike, or per stirpes, to the descendants of any of them who predecease me."
* * * * * *
Dr. Rozas' will was duly probated and the legatees were placed into possession of the assets of the estate by Judgment of Possession rendered January 8, 1987, under Probate No. P86-117-C of the 27th Judicial District Court, St. Landry Parish, Louisiana.
On June 8, 1988, defendant, Dorothy Prejean Rozas, the surviving spouse of Dr. Rozas, contracted another marriage. Plaintiffs, Mary Ann Rozas Darby and Alice Augusta Rozas Bienvenu, Dr. Rozas' children from a prior marriage, brought suit to terminate defendant's usufruct. Plaintiffs also sought to recover all sums paid to defendant as usufructuary since the date of her remarriage. The trial court ruled that the usufruct did not terminate upon defendant's remarriage. Plaintiffs have now perfected this appeal. We reverse and remand.
The sole issue raised by this appeal is whether the usufruct granted to defendant terminates upon the remarriage or the death of the usufructuary. Resolving this issue necessarily involves determining whether the usufruct granted to defendant is a legal or testamentary usufruct.
Under Civil Code Article 544, a usufruct may be established by a juridical act either inter vivos or mortis causa, or by operation of law. The usufruct created by a juridical act is referred to as a conventional usufruct, and the usufruct created by operation of law is referred to as a legal usufruct. Conventional usufructs are of two kinds: contractual (created by an inter vivos juridical act) or testamentary (created by a mortis causa juridical act). There are various kinds of legal usufructs in Louisiana; the one we are concerned with is the legal usufruct of the surviving spouse over the deceased spouse's share in the community that has been inherited by descendants.
For well over one hundred years, Louisiana has adopted some form of usufruct in favor of the surviving spouse "to secure means of sustenance for the surviving *986 spouse and to prevent partition or liquidation of the community to the prejudice of that spouse." Yiannopoulos, 3 Louisiana Civil Law Treatise: Personal Servitudes, at 381 (1989). In the Civil Code of 1870, the usufruct of the surviving spouse was contained in Article 916. By Act 919, which acquired the force of law on January 1, 1982, Civil Code Article 916 was repealed and replaced by Article 890. Article 890 provides:
"If the deceased spouse is survived by descendants and shall not have disposed by testament of his share in the community property, the surviving spouse shall have a legal usufruct over so much of that share as may be inherited by the descendants. This usufruct terminates when the surviving spouse contracts another marriage, unless confirmed by testament for life or for a shorter period.
The deceased may by testament grant a usufruct for life or for a shorter period to the surviving spouse over all or part of his separate property.
A usufruct authorized by this Article is to be treated as a legal usufruct and is not an impingement upon legitime.
If the usufruct authorized by this Article affects the rights of heirs other than children of the marriage between the deceased and the surviving spouse or affects separate property, security may be requested by the naked owner."
It is important to point out that a usufruct granted in favor of a surviving spouse can be legal or testamentary. When a usufruct is created by operation of law under Article 890, the following consequences attach: (1) the usufruct terminates upon remarriage; (2) the surviving spouse is not liable for the payment of Louisiana inheritance taxes; (3) the surviving spouse is relieved of giving security when the naked owners are children of the marriage; and (4) the usufruct does not impinge on the legitime. If the usufruct is testamentary: (1) in the absence of contrary testamentary disposition, the usufruct is for life; (2) the surviving spouse owes taxes; (3) in the absence of contrary testamentary disposition, the surviving spouse must provide security; and (4) the usufruct can potentially impinge on the legitime.
As Professor Yiannopoulos notes in his treatise, "[t]he distinction between legal usufruct and testamentary usufruct has been blurred in Louisiana by the doctrine of confirmation of the legal usufruct by will." Yiannopoulos, Personal Servitudes, at 392. Several early decisions interpreted Article 916 (the predecessor to Article 890) very narrowly, holding that any disposition by will defeated the legal usufruct in favor of the surviving spouse. See e.g. Succession of Schiller, 33 La.Ann. 1 (1881); Forstall v. Forstall, 28 La.Ann. 197 (1876). However, later, a line of jurisprudence overruled these cases and determined that a testamentary disposition that was not adverse to the interests of the surviving spouse did not defeat the usufruct. See e.g. Succession of Waldron, 323 So.2d 434 (La.1975); Succession of Chauvin, 260 La. 828, 257 So.2d 422 (1972). In other words, the surviving spouse is entitled to the legal usufruct under Article 890 unless a testamentary disposition is adverse to the legal usufruct. The Louisiana Supreme Court in Succession of Waldron, supra, observed that such an adverse disposition may occur when the testator makes an excessive disposition to persons other than the surviving spouse of the portion of the estate which is subject to the legal usufruct, or, very simply, if the testator expressly states his intention that the legal usufruct does not apply.
Under Article 890, a testator may confirm by testament the legal usufruct of the surviving spouse over the share of the community inherited by descendants "for life or for a shorter period." A testator may also grant to the surviving spouse "for life or a shorter period" a usufruct over all or a portion of his separate property. Professor Yiannopoulos points out that whenever a testator grants the surviving spouse a usufruct, the question that naturally arises is whether that usufruct is testamentary or legal. He writes:
"In all cases in which a predeceased spouse bequeaths to the surviving spouse a right of usufruct, the right may *987 qualify as a legal usufruct, even if the usufruct is over separate property. However, it would be absurd to suggest that because the application of Article 890 ordinarily favors the interests of the surviving spouse a testator necessarily establishes a legal usufruct when he grants a usufruct to his surviving spouse. A testator enjoys testamentary freedom not to confirm the legal usufruct under Article 890, and he may by will enlarge or diminish the rights that the surviving spouse has under Article 890 in the absence of a will. As in the past, the question of the nature of the usufruct that the testator intended to create is a matter of testamentary interpretation.
In the absence of express language qualifying the usufruct as legal or testamentary, the intent of the testator must be gathered from the provisions of the will. When a testator grants to the surviving spouse as usufructuary rights that are incompatible with the notion of legal usufruct, he intends to grant a testamentary usufruct."
Yiannopoulos, Personal Servitudes, at 394. As examples of "rights that are incompatible with the notion of legal usufruct" Professor Yiannopoulos uses the hypothetical of a testator authorizing the usufructuary to grant a mineral lease without the consent of the naked owner, in contravention of Louisiana Mineral Code Article 190(B), and the hypothetical of the testator granting the usufructuary free reign to dispose of at his discretion corporeals and incorporeals, movables and immovables, contrary to Article 568 of the Civil Code.
In the case at bar, we can find nothing in Dr. Rozas' testament which would indicate that his intent was to create a testamentary and not a legal usufruct. Essentially, defendant received the disposable portion of the estate in full ownership and a usufruct over the community and separate property bequeathed to plaintiffs. We determine that such a bequest is not "incompatible with the notion of legal usufruct" and in no way constitutes an adverse disposition.
Defendant does argue, however, that the usufruct of all royalties and minerals is "incompatible with the notion of legal usufruct." We disagree. Under Louisiana Mineral Code Article 190(B):
* * * * * *
"B. If a usufruct of land is that of a surviving spouse, whether legal or conventional, and there is no contrary provision in the instrument creating the usufruct, the usufructuary is entitled to the use and enjoyment of the landowner's rights in minerals, whether or not mines or quarries were actually worked at the time the usufruct was created. However, the rights to which the usufructuary is thus entitled shall not include the right to execute a mineral lease without the consent of the naked owner."
We find nothing in the usufruct of royalties and minerals granted to the surviving spouse which would be "incompatible with the notion of legal usufruct."[1]
Defendant also argues that the usufruct granted over separate property is an exclusive characteristic of testamentary usufruct. This is simply just not the case under Civil Code Article 890 and the jurisprudence construing it. Article 890 allows the testator to grant a usufruct over all or part of his separate property. Paragraph three of Article 890 states that "[a] usufruct authorized by this Article is to be treated as a legal usufruct and is not an impingement upon legitime." In Succession of Steen, 499 So.2d 1338 (La.App.3d Cir.1986), rev'd on other grounds, 508 So.2d 1377 (La.1987), the decedent died possessing both community and separate property. By testament the deceased spouse gave his descendants the forced portion of *988 his community and separate property and bequeathed to his spouse the disposable portion of his estate. The testament further confirmed the legal usufruct over all of his community property and granted his surviving spouse a usufruct over all of his separate property. This court observed in that case:
"It is clear from the literal provisions of Article 890 of the Louisiana Civil Code that a decedent may by testament grant a usufruct for life to his surviving spouse over all or a part of his separate property.... Such a testamentary usufruct is a legal usufruct by operation of law."
Succession of Steen, at 1342; see also Succession of Daly v. McNamara, 515 So.2d 661 (La.App.3d Cir.1987), writ denied, 519 So.2d 119 (La.1988). The Supreme Court granted writs in that case and in its review stated, "by testament, a spouse may grant a usufruct over all or part of his separate property.... any usufruct granted by a testator to a spouse is to be treated as a legal usufruct." Succession of Steen, 508 So.2d 1377, 1379 (La.1987). Additionally, Professor Yiannopoulos notes:
"Normally, a usufruct created by a testament ought to be qualified as a testamentary usufruct; however, according to Article 890(2) and (3), the usufruct that a spouse establishes by a testament over his separate property in favor of the surviving spouse qualifies as a legal usufruct."
Yiannopoulos, Personal Servitudes, at 409. Accordingly, we find that the usufruct granted by Dr. Rozas over both his community and separate property qualifies as a legal usufruct.
In his testament, Dr. Rozas neglected to set out the duration of the usufruct over his community property and his separate property. It is clear that under Article 890 (paragraph one), if no period is designated for the confirmed legal usufruct over community property, it terminates on the surviving spouse's remarriage. See Succession of Chauvin, supra; Succession of Vallette, 538 So.2d 707 (La.App.4th Cir.), writ denied, 543 So.2d 20 (La.1989). Regarding the usufruct over separate property, Article 890 (second paragraph) states that the testator may grant it for life or shorter period, but nothing is stated concerning what happens when the testator neglects to set out the duration of the usufruct. Professor Yiannopoulos squarely addresses this point:
"It is preferable ... to read Article 890(2) and (3) in the light of the first paragraph of the same article and to conclude that the usufruct should terminate upon the remarriage of the surviving spouse. The alternative would be to qualify the usufruct as testamentary, which, in certain cases at least, would be contrary to the intent of the testator."
Yiannopoulos, Personal Servitudes, at 409. Professor Yiannopoulos' view makes good sense and we agree with it. Therefore, the usufruct granted over Dr. Rozas' community and separate property terminated on defendant's remarriage occurring June 8, 1988.
Plaintiffs would have this court remand this matter to the trial court for an accounting for all sums which may have been paid to defendant as usufructuary after her remarriage, as the trial court did not allow any evidence with regard to values. This court grants the remand for such purpose.
For the foregoing reasons, the judgment of the trial court is reversed. The case is remanded for further proceedings not inconsistent with this opinion. All costs are to be borne by defendant, Dorothy Prejean Rozas.
REVERSED AND REMANDED.
FORET, J., dissents with reasons.
FORET, Judge, dissenting.
I respectfully dissent from the majority opinion. I would affirm the result of the trial court judgment, although not necessarily the reasoning.
The uncertainty of the law in this area is exemplified by the fact that the majority, as I did as the original author, relied a great deal on Professor Yiannopoulos' treatise. In this dissent, as I did in my review, *989 I will refer to the page numbers in 49 LLR 803 rather than the treatise as cited by the majority opinion. This is purely for my convenience and I apologize therefor. The articles are identical.
With all due respect to the majority opinion, and to Professor Yiannopoulos, I make mention of the fact that Professor Yiannopoulos' article and the majority reviewer vacillate a great deal in discussing the Louisiana jurisprudence and statutory law.
The fiction of the legal usufruct relied on by the majority is just that, a fiction. The "legal" usufruct evolved in this context as an inheritance tax avoidance device and to pronounce, in Article 890 (third paragraph), that such a usufruct "is not an impingement on the legitime."
A usufruct is either legal or testamentary.[1] It is a legal usufruct where it comes into being by operation of law, ... period. If a usufruct does not come into effect by operation of law, then it is a conventional or testamentary usufruct. There is no other way. You can call it a flop-eared dog if you wish, but you are still dealing with a testamentary usufruct.
Testamentary usufructs terminate as specified by the testator, either specifically, or as gleaned from his intent. It appears to me that it is just as logical, if not more so, to hold that if a testator does not designate a term for the testamentary usufruct, that his intention can be presumed to be that it will terminate at the death of the usufructuary. To surmise, as does the majority, that the testator's intent was that it would terminate upon remarriage of the usufructary, is rank speculation.
As for the majority's relying on Professor Yiannopoulos' observation that it is "preferable" that the usufruct terminate at remarriage, I would simply note here that some folks like their eggs scrambled; others hate broccoli.
One observation by Professor Yiannopoulos in an Epilogue to his article, that the majority fails to mention, is that in 1983 Senator Casey introduced Senate Bill 137. At 49 LLR, 803, page 839, Professor Yiannopoulos points out that, among other things, Senator Casey proposed to amend the third paragraph of C.C. art. 890 as follows:
"A usufruct authorized by this article terminates when the surviving spouse contracts another marriage, unless confirmed by testament for life or for a shorter period. A usufruct authorized by this article is to be treated as a legal usufruct and is not an impingement on the legitime.
....
Yiannopoulos goes on to say, at page 840, that:
"The third paragraph of the proposed amendment would clarify the ambiguity of the present law concerning the termination of a usufruct granted to the surviving spouse over separate property without indication as to its duration. Under the proposed amendment, a usufruct over separate property would terminate, like a usufruct over community property, upon the remarriage of the surviving spouse, unless confirmed by testament for life or for a shorter period.

"These modest amendments met resistance from professors and attorneys and were advisedly deferred." (emphasis provided.)
The "modest amendments" are still "deferred" by the Louisiana Legislature. The majority opinion, it seems to me, is indulging in judicial legislation by reading into the third paragraph of Article 890 an interpretation thereof that was declined by the Louisiana Legislature and advised against by professors and attorneys as being better left to triers of fact to determine the intent of the testator. To use the term "legal usufruct" as a tool to possibly thwart the intent of the testator and substitute the court's own sense of equity to dispose of the testator's will is injudicious. If the testator, a medical doctor, had intended the usufruct of his separate property to be for a shorter period, he would have said so. If he had intended the usufruct to terminate *990 at the marriage of the usufructuary, he would have said so.
The term "legal" in the context of Article 890 is ambiguous when it is considered in the context of the other provisions of conventional, legal, and testamentary usufructs. As such, the legislative intent is determinative. The failure of the attempted amendment to Article 890 by Senator Casey loudly attests to the fact that the legislative intent is contrary to the majority opinion herein.
I respectfully dissent.
NOTES
[1] Paragraph B of Article 190 of the Louisiana Mineral Code did not come into effect until after the date the will was executed and the date the testator died. However, the provisions of the Mineral Code are to be applied retroactively unless the application divests already vested rights or impairs the obligation of contracts. Louisiana Mineral Code Article 214; GMB Gas Corporation v. Cox, 340 So.2d 638 (La.App.2d Cir.1976). No such impediment to applying Article 190(B) exists in this case.
[1] A usufruct can also be conventional, but that is not the case here.